Filed April 23, 1886.

---

No. 12,765.

FOSTER v. THE STATE.

CRIMINAL LAW.—*Receiving Stolen Goods. — What Proof Necessary to Sustain Charge.*—To sustain the charge of having received stolen goods, it must be proved that the goods were received, either directly or indirectly, from the thief, knowing them to have been stolen. One who receives

goods from the person who received them from the thief is not guilty of the offence, although he takes wickedly, unless he receives them under circumstances which connect him with the thief.

SAME.—*Indictment.*— *Unknown Thief.*—*Identification.*—*Evidence.*—In charging the offence of having received stolen goods, it is sufficient to allege that they were stolen by some person to the grand jurors unknown, but at the trial he must be in some manner identified or singled out, and it must be made to appear that the name of the thief was unknown to the grand jury, and that reasonable diligence was used to ascertain it.

From the Ripley Circuit Court.

*J. O. Cravens, J. G. Berkshire, B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellant.

*F. T. Hord,* Attorney General, *L. Dixon,* Prosecuting Attorney, *W. B. Hord, W. G. Holland, L. Ritter, E. F. Ritter* and *B. W. Ritter,* for the State.

NIBLACK, C. J.—At the September term, 1885, of the Ripley Circuit Court, the grand jury returned a joint indictment against the appellant, Thomas W. Foster, and one Harry Webster, in two counts. The first count charged that the appellant and said Webster, on the 24th day of May, 1885, in the county of Marion, in this State, feloniously took, stole and carried away, a roan mare, of the value of $160, and the property of one Henry F. Wesling, and that, on the 26th day of the same month, the appellant and the said Webster conveyed said mare to and into the county of Ripley, in said State. The second count charged that, on said 24th day of May, 1885, at said county of Marion, a person whose name was unknown to the grand jury, feloniously took, stole and carried away a roan mare, of the value of $160, and the property of the said Henry F. Wesling; that said unknown person conveyed said mare to and into said county of Ripley, and that, on the said 26th day of May, 1885, the appellant and the said Webster unlawfully bought, received, accepted and concealed said mare, knowing her to have been so feloniously stolen.

A separate trial was ordered, and the cause as against the appellant was, by agreement, submitted to the court for trial without a jury. The court found the appellant guilty as charged in the second count of the indictment, and, in addition to disfranchising him for a period of time, sentenced him to imprisonment in the State's prison for the term of three years. R. S. 1881, section 1935.

In conjunction with other matters excepted to at the proper time, a question was reserved below, and is urged in argument here, upon the sufficiency of the evidence to sustain the finding.

It was shown by the evidence, that the appellant was the proprietor of a livery stable, at the town of Osgood, in Ripley county, and was, in connection with the livery business, engaged in buying and selling horses, of which latter fact public notice had been given in various ways; that, on the night of the 24th day of May, 1885, which was Sunday night, the roan mare, described in the indictment, was stolen from the stable of Wesling, her owner, situate about one-half of a mile west of the town of Cumberland, in Marion county; that, on the morning of the following Tuesday, the 26th day of the same month, a man giving his name as James Howard, and already known to some persons by that name at that place, rode the mare into the town of Osgood, and up to the front door of the appellant's livery stable; that Webster, who was an employee and an assistant of the appellant in his livery stable, recognizing Howard as a person by that name, whom he had met before, introduced him to the appellant; that Howard thereupon offered to sell the mare to the appellant; that Howard, in answer to questions addressed to him, said he was a farmer and resided two and a half miles west of Lock Springs, a distance of about ten miles in a northern direction from Osgood, and that the mare had come from the State of Kentucky, and that he, Howard, had traded another horse for her; that after some delay and discussion, as well as apparent disagreements as to the age

and market value of the mare, the appellant offered Howard $125 for her, which offer the latter with seeming reluctánce agreed to accept; that the appellant then, in the presence of several other persons who had been all the time about the stable, assumed to pay, and, as was apparently conceded, did pay, to Howard $125 in paper money, and put the mare in one of the stalls of his stable; that Howard was soon afterwards seen at several other places in Osgood, during which time he became known to others by the name of Howard; that early the next morning the appellant started the mare, with two other horses, across the country in the direction of and on her way to Cincinnati; that at Aurora the appellant met with an acquaintance to whom he sold the mare for $130; that, on the next Sunday, an agent of Wesling discovered the mare in the possession of her last purchaser as above, near Aurora; that, on the next day, Wesling went down to Aurora and identified and reclaimed the mare; that, on being notified by telegraph, the appellant went to Aurora and met Wesling, and after hearing Wesling's statement, and examining other matters connected with such statement, consented that Wesling might take the mare, and refunded the money which he had received from the purchaser at Aurora; that, upon being required to account for his possession of the mare, the appellant informed all interested and all who inquired that he had purchased her from James Howard who did not live a great distance from Osgood; that upon ascertaining that the mare was about to be reclaimed as a stolen animal, the appellant sent Webster out to the neighborhood in which Howard had said he resided, for the alleged purpose of finding him, and seeking indemnity for the loss which he, the appellant, was likely to sustain by reason of his purchase of the mare; that Webster was unable to find any trace of Howard, or to ascertain that any such man, as Howard represented himself to be, had ever lived in that or any of the adjacent neighborhoods.

There was evidence tending to show that the appellant had

made contradictory statements as to who, and the kind of man, Howard was, as well as to what he knew and had known of Howard, and these alleged contradictory statements, taken in connection with his inability to account for Howard, had seemingly a controlling influence with the circuit court in reaching the conclusion that the appellant was guilty as charged in the second count of the indictment.

Webster testified that the Thursday before the day on which the appellant purchased the mare, as herein above stated, Howard came to the livery stable at Osgood and inquired for the appellant, saying that he had two horses, one a dark gray and the other a bay, which he would like to sell, and inquiring if the appellant would buy them if he would bring them in ; that Howard also asked something about the prices which the appellant was paying for horses, telling the witness that his name was James Howard, and that he resided two and a half miles west of Lock Springs ; that he, Webster, told Howard that the appellant would buy the kind of horses indicated, and that he, Howard, could bring them in at any time ; that the appellant was in Cincinnati on that day, of which fact the witness informed Howard when the latter inquired for the appellant.

As to this alleged interview with Howard, Webster was corroborated by a boy who was also working in and about the livery stable. Webster further testified that when the appellant returned from Cincinnati, a few hours later, he reported to the latter what had occurred between him and Howard, and that it was upon the strength of the acquaintance thus made with Howard that he, witness, introduced him to the appellant, when he, Howard, rode up to the livery stable upon the roan mare on the Tuesday morning following. It also came out as a part of the evidence, that Webster had been a witness before the grand jury, and that he had testified before that body concerning the appellant's, as well as his own, connection with the mare, and generally as to the circumstances which led to the finding of the indictment.

One Rand testified that he was a member of the grand jury which returned the indictment; that Wesling stated to that body that he did not know who stole the mare, but that there was no evidence before the grand jury that the name of the person who committed the larceny in question was unknown, or upon the subject of the name of such person.

· To render the offence of receiving stolen goods possible, the goods must retain their stolen character at the time the party charged received them. If, therefore, the goods have been transferred from the thief to a guilty receiver, the latter takes as a receiver, and not as a thief. In his hands, and as to him, the goods are not stolen. In his hands, the character of the goods is derived from his offence, and not from the offence of the person who stole them, so that one who receives such goods from him, however wickedly, is not guilty of receiving stolen goods within either the common law, or statutory definition of that offence, unless such second or subsequent receiver receives the goods under circumstances which connect him with the thief. 2 Bishop Crim. Law, section 1140; Whart. Crim. Law, section 983; *Kaufman* v. *State*, 49 Ind. 248; *Owen* v. *State*, 52 Ind. 379. Hence, to sustain the charge of having received stolen goods, it must be proven that the goods were received, either directly or indirectly, from the thief, knowing them to have been stolen.

In charging the offence of having received stolen goods, it is sufficient to allege that the goods were stolen by some person to the grand jurors unknown, but, in such case, it must be made to appear at the trial that the name of the thief was unknown to the grand jury, and that reasonable diligence was used to ascertain his name. 3 Greenleaf Ev., section 22; *Blodget* v. *State*, 3 Ind. 403; *Stone* v. *State*, 30 Ind. 115; *McLaughlin* v. *State*, 45 Ind. 338; *Moore* v. *State*, 65 Ind. 213; *State* v. *Long*, 103 Ind. 481.

Although, in such a case, the name of the thief may have been unknown to the grand jury, he must, in some manner,

be individuated, identified, or singled out at the trial. Wharton Crim. Ev., section 97; *State* v. *Trice*, 88 N. C. 627.

In this case, the facts and circumstances, established at the trial, made a good *prima facie* case against Howard as the person who stole the mare, and it was doubtless upon the theory that Howard was the thief that the circuit court found the appellant to be a guilty receiver of the stolen property. He was the first person found to be in possession of the mare after she was stolen. He gave a false account of where she came from, and presumably as to the manner in which he had obtained her; also as to the place at which he lived. These were all circumstances pointing to Howard as the probable thief. Without attempting to decide upon whom the burden of proof rests in all matters involved at the trial, where the name of a third person is alleged to have been unknown to the grand jury, the evidence before us very clearly indicates that Howard's name was not, in legal contemplation, unknown to the grand jury when the indictment was returned against the appellant. The real question at the trial in that respect was, What did Howard call himself and permit himself to be called? Wharton Crim. Plead. and Prac., section 101. As has been seen, the evidence as to that was distinct and uncontradicted. Webster knew the name by which Howard had called himself and had permitted himself to be called by others, and the grand jury ought to have made inquiry of him on that subject when he was before it as a witness. Instead, that body seems to have assumed that Howward's name was unknown and to have made no inquiry touching his name. If Howard did not steal the mare, then the evidence failed to establish the fact that the appellant bought the mare from the person who did steal her. In any event, we think the finding of the circuit court was not sustained by the evidence, and that a new trial ought to have been granted.

The judgment is reversed, and the cause remanded for further proceedings.

The clerk will give the necessary notice for the return of the prisoner to the custody of the sheriff of Ripley county.

Filed May 11, 1886.