The People of the State of New York, Respondent, v. Thomas
J. Ray, Appellant.

*Trial of an indictment — conduct of a district attorney, in asking improper questions
prejudicial to the defendant, held to warrant a reversal of a conviction.*

The conduct of a district attorney upon the trial of an indictment, in persisting in
asking questions which have a tendency to throw an atmosphere of suspicion
about the defendant, relating to transactions of the defendant not connected
with the indictment, after the court has excluded answers to similar questions,
considered to have a tendency to prejudice the defendant with the jury, and
to warrant the reversal of a judgment convicting him of the crime charged in
the indictment, especially where the evidence in support of the commission of
the crime was not strong.

Appeal by the defendant, Thomas J. Ray, from a judgment of
the County Court of Orange county in favor of the plaintiff, ren-
dered on the 14th day of February, 1898, upon the verdict of a jury
convicting him of the crime of feloniously receiving stolen goods,
knowing them to have been stolen.

*Benjamin McClung* [*William Vanamee* with him on the brief],
for the appellant.

*A. H. F. Seeger* for the respondent.

Hatch, J.:

I dissent from the doctrine announced by the presiding justice in
his opinion in this case. After a careful reading of the testimony
I am unable to find that any technical error was committed upon
the trial. Certainly there is none, in my opinion, which was the
subject of any valid exception, and no ground for reversal exists in
this regard. I am, however, impressed with the idea that the dis-
trict attorney went considerably beyond the line of propriety in his
examination upon subjects which the court had properly excluded
as improper for consideration by the jury. It is quite evident that
the district attorney had conceived a belief that the defendant was
consorting with improper and criminal characters, and was resorting
to their places of rendezvous. It would have been entirely compe-
tent to show such facts if the defendant had been properly connected
therewith, and to show that he dealt with persons engaged in selling

articles that were stolen, or pawn tickets representing such articles, if connected in point of time and character of offense with the crime charged in the indictment. It was not permissible, however, to show such conditions as of general existence, either as to the character of the persons, place or dealings. The evidence must have relevancy to the crime charged, both as to time of occurrence and character of the offense. The questions bearing upon this subject did not comply with the rule, and were entirely incompetent. The court excluded them as such. The district attorney, however, was persistent in following up this line of examination, for the evident purpose of creating a suspicion that the place where the defendant claimed to have bought the pawn ticket was a place of resort for criminals, and the persons with whom he was then associating were criminal characters, thereby creating in the minds of the jury a prejudice against the defendant which would induce them to give greater weight to the proper testimony in the case, or greater weight than it was entitled to receive. The offense of the district attorney in this regard is quite marked, and should have been promptly suppressed by the court. It was likely to, and probably did, prejudice the minds of the jury against the defendant. The evidence upon the charge contained in the indictment was not strong; and while in my opinion it warranted the jury in finding a verdict of guilty, yet the right of the defendant was to have the trial conducted in such manner as to entirely exclude improper matter, or conduct having a tendency to prejudice such right. It is doubtful if this has been done; and so much doubt in this respect arises in my mind as to lead me, with considerable hesitation, to the conclusion that justice requires the granting of a new trial.

CULLEN and BARTLETT, JJ., concurred.

GOODRICH, P. J.:

Section 550 of the Penal Code reads in part as follows: " A person, who buys or receives any stolen property, or any property which has been wrongfully appropriated in such a manner as to constitute larceny according to this chapter, knowing the same to have been stolen or so dealt with, * * * is guilty of criminally receiving such property. * * * "

The indictment was found under this section, and charges the defendant with receiving on July 30, 1896, stolen goods, viz., a sealskin sack of the value of $150, the property of one Johannsen, then lately feloniously stolen from him, and that the defendant unlawfully and unjustly did feloniously receive and have the same, knowing the same to have been stolen. Here is a clear statement that the crime was consummated on July thirtieth by the defendant receiving the goods, with knowledge then existing that they were stolen ; and this is the knowledge and the time of the knowledge required by the statute, so that the proof must meet the charge as of that date. No subsequent knowledge is charged or chargeable. Indeed, it is to be observed that there can, on the testimony, be no other knowledge than that which the defendant possessed at the time he purchased the pawn ticket for the goods.

On the evening of March 15, 1896, a sleeveless sealskin sack valued at $150 was stolen from the store of one Johannsen, in the city of New York. On March twenty-fourth it was pledged at a pawnbroker's shop in Philadelphia by a woman who gave her name as Goldstein, and her address as 1224 North Third street. It was proved on the trial that no such woman lived at that place, which was a vacant lot. The sum of twenty-five dollars was loaned on the sack, and the woman received a ticket due to expire on July twenty-fourth. A day or two before that date the defendant, at some place in New York city, purchased the ticket for five dollars, and returned to his home in Newburgh, New York. The next day he telegraphed and wrote to the pawnbroker inclosing the pawn ticket and money to redeem the sack, directing him to send it to Goldstein, care of Thomas Ray, at Newburgh. The package was forwarded by an express company, which delivered it on July twenty-seventh to some one who called at the express office for it and who signed an entry on the receipt book, " T. Ray," and the package was taken to the brewery of one Leicht, where the defendant was employed. It was the custom for some one from this brewery to call at the express office for packages. The express clerk did not testify, and there is no evidence, aside from the signature itself, that the defendant signed the receipt. He positively denies that he did receive or open the package at the company's office or sign the receipt, and there is other evidence that the signature to the receipt

is not in his handwriting, but there is no doubt on the evidence that the sack came into the defendant's possession; and the question as to who signed the receipt is material only as relating to the time when the sack came into the defendant's possession, and to his knowledge of its character.

Parrott, the marshal of the police in Newburgh, testified that on July twenty-ninth he received word of the shipment of the package to Newburgh, and that on July thirtieth he saw the defendant and told him that the sack which he had received had been stolen, and that he must give it up; that the defendant demurred to this, asking where he was going to get the money which he had expended; and that the defendant told him that he had got the ticket from a man who was at State prison while the defendant was a keeper there. The latter statement was denied by the defendant. The next day, July thirty-first, the defendant went to the police station, and again wanted to know of the sergeant in charge, and of the marshal, where he was to get his money, and was informed by the marshal that he did not know, but that he must give up the sack, and if he did not that he would be arrested for receiving stolen goods. The following day, August first, the defendant delivered the sack at the station house.

There was contradictory evidence on many minor details. The defendant testified that he never opened the package, and that he delivered it at the station house in the same condition that it was in when he first received it. There was evidence tending to contradict this, and possibly it may have had some bearing upon the defendant's treatment of the sack after he had been informed by the marshal that it had been stolen. The defendant was not indicted till January, 1898.

The defendant, at the close of the People's evidence, moved to dismiss the indictment, on the ground that the prosecution had failed to produce evidence sufficient to prove the truth of the charge; and at the close of the whole evidence the defendant again moved to dismiss on " the ground that it now appears affirmatively that the defendant did not know or have any knowledge of this act. And also upon the same ground that the court direct a verdict of acquittal." These motions were denied, exceptions were taken, and the case was submitted to the jury, which found the defendant guilty.

From the judgment entered upon this verdict the defendant appeals.

The defendant's counsel bases his argument for reversal chiefly upon the grounds of errors in the charge of the court, and, further, that the course of the trial was such as to prejudice the jury against the defendant, by innuendo and suggestion made in questions to witnesses, on the part of the district attorney.

The judge charged that to make out the case of the People it was necessary that "three facts should be established beyond any reasonable doubt : *First.* That the goods themselves were stolen. *Second.* That they were in the possession of this defendant. *Third.* That he knew the goods so in his possession were stolen at the time they were in his possession." There is no question that the evidence was sufficient to establish the first two propositions. As to the third proposition, I think there was error. The statute requires that the guilty knowledge must exist in the defendant at the time of the buying or receiving of the stolen property, and not at any time during which it is in his possession. In this case the buying or receiving the goods must have been either at the time of the purchase of the pawn ticket, or when the defendant received the sack at Newburgh. The pawn ticket was purchased on the twenty-second or twenty-third, and redeemed on the twenty-fourth of July, and the goods were delivered at Newburgh, apparently, on the twenty-seventh. The purchase of the ticket, followed by the delivery of the goods at Newburgh, at the place directed by the defendant, constituted a receiving of the sack. Whether this was on the twenty-seventh, or some other day previous to the thirtieth, when Marshal Parrott had his interview with the defendant and informed him that the sack was stolen, does not conclusively appear. There is no evidence showing that any further knowledge was acquired by the defendant. The fact that he was informed by the marshal that the goods were stolen has no bearing upon the subject of guilty knowledge at the time of receiving, for that interview was evidently after the defendant had purchased the ticket and received the goods. The case is barren of any facts showing guilty knowledge, except that Parrott testified that the defendant told him that he had purchased the ticket of a man who was at or in State prison while the

defendant was a keeper there, and this affords very slight proof that the person referred to was a convict, in which case the defendant ought to have been more careful in his dealings than he would have been required to be with a stranger. We think that the charge as to the third fact necessary to be established was error.

The court also charged : " In the first place a man charged with crime is entitled to the presumption that the law gives him, of innocence, until the proof given on the part of the prosecution overcomes that presumption and satisfies the jury beyond a reasonable doubt of his guilt of the crime with which he is charged." This was in effect repeated : " That is to say, the person accused of crime comes into court with the presumption accompanying him from the time of the beginning of the trial, and throughout the trial, until by the testimony the jury are satisfied that the presumption has been overcome and beyond a reasonable doubt the prisoner is guilty of the offense charged."

No exception was taken to this portion of the charge, but when it appears that injustice has been done, on the merits, to the defeated party by an error in the court below, the appellate court may review the same although no exception was taken. (*Howell* v. *Manwaring*, 3 N. Y. St. Repr. 454 ; affd. without opinion, 118 N. Y. 682 ; *Maier* v. *Homan*, 4 Daly, 168.) The Code of Criminal Procedure (§ 527) also provides that " the appellate court may order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below."

It is a cardinal principle in criminal law that every man is presumed to be innocent of crime, and a person indicted for an offense is entitled to the benefit of this presumption until the case is submitted to the jury has established the contrary. The court would have correctly charged as to this presumption, and there would have been no error if the cited sentence of the charge had ended with such statement of the law, but the court limited the effect of this presumption by saying that it lasts only until the proof given on the part of the prosecution overcomes that presumption and satisfies the jury beyond a reasonable doubt of his guilt of the crime with which he is charged. This, we think, was error. The presumption of

innocence continues throughout the trial. It is true that the testimony may have been such as to call upon the defendant to explain his possession of the goods, but the presumption of his innocence was not destroyed by evidence of his possession of stolen goods. In other words, the burden of proof remained on the prosecution at the close of the evidence just as it did at the opening. (*Farmers' Loan & Trust Co.* v. *Siefke*, 144 N. Y. 354.)

Section 389 of the Code of Criminal Procedure says : "A defendant in a criminal action is presumed to be innocent, until the contrary be proved ; and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal."

In *People* v. *Van Houter* (38 Hun, 168) Mr. Justice FOLLETT said that it was error to refuse, on request of the prisoner's counsel, to charge the first part of this provision, distinct from the second ; that the two parts of the sentence, while nearly related, were not identical, and that it has long been the rule of the criminal law that a defendant in a criminal action is entitled to have the jury instructed that the law presumes him to be innocent of the crime charged.

So also the court erred in charging that "where the person is shown to be in the possession of stolen goods a comparatively short time after the larceny or burglary, that where he is shown to be in possession of stolen goods, that fact, unexplained, may raise a presumption, unless explained to the satisfaction of the jury, that he is guilty of receiving those goods and knew them to have been stolen." The defendant excepted to this portion of the charge, and we think his exception was well taken.

There is no such presumption of law. At most, it was a question to be submitted to the jury to say what was a comparatively short time after the burglary. Mr. Greenleaf (1 Greenl. Ev. [15th ed.] 53, note e) says : "The weight of authority seems to hold that there is no presumption *of law* that a person's possession of the fruits of crime, though recent, exclusive and unexplained, is guilty possession, but that this fact is *prima facie* evidence of the prisoner's guilt, which the jury may consider, along with the other facts of the case, in arriving at their verdict. This is, therefore, rather a presumption of fact, or circumstantial evidence, and is governed by the rules of that class of evidence."

The court did not submit to the jury the question whether four

months was a " comparatively short time" after the burglary, sufficient in connection with the other evidence, to justify them in the conclusion that the defendant knew that the goods were stolen goods; and while there was no exception to this part of the charge, we are of opinion that injustice has been done to the defendant by a failure to submit this question. There is no hard and fast rule as to what length of time constitutes recent possession sufficient to raise a presumption that a defendant knew that the goods were stolen. There is a very exhaustive review of the law upon this subject in *State* v. *Hodge* (50 N. H. 510), where DOE, J., cites numerous cases as to time. In one (*Cockin's Case*, 2 Lew. C. C. 235) the time was twenty days, and the court said: " If I was now to lose my watch, and in a few minutes it was to be found on the person of one of you, it would afford the strongest ground for presuming that you had stolen it; but if a month hence it were to be found in your possession, the presumption of your having stolen it would be greatly weakened, *because stolen property usually passes through many hands.*" In a valuable note to this case the reporter says: " The question, however, of distance of time or recent possession must be at all times one of fact under the circumstances, and a jury under the judge's direction must ultimately decide."

In another case (*Rex* v. *Partridge*, 7 C. & P. 551) the indictment was for stealing two pieces of unfinished woolen cloth found in defendant's possession two months after they were stolen; and the court held that it was a question for the jury.

In *Rex* v. *Adams* (3 C. & P. 600) the indictment was for stealing an axe, saw and mattock, found in the defendant's possession three months after they were stolen. The court directed an acquittal on the ground that this was not recent possession.

In *Reg.* v. *Hewlitt* (3 Russ. Cr. [4th ed.] 215, note e) three sheets were found on the prisoner's bed three months after they had been stolen, and it was urged that this was too long a time after the larceny to call upon the prisoner for explanation, but the court sent the question to the jury, saying that it was impossible to lay down any definite rule as to the precise time which was too great to call upon the prisoner to give an account of his possession, and that in the case there was some evidence, though very slight, for the jury to consider.

*Reg.* v. *Cruttenden* (6 Jur. [Part 1] 267) was an indictment for larceny of a shovel found six months after the loss in the house of the prisoner, who was not then at home. The court held that this raised no presumption, and directed an acquittal.

In *Reg.* v. *Evans* (2 Cox C. C. 270) a beetle head was stolen and it was shown that the prisoner had it in his possession fifteen months afterwards. Baron ALDERSON held that this length of time was sufficient to exonerate the prisoner from the necessity of accounting for the possession, and he was acquitted.

In *State* v. *Shaw* (4 Jones [N. C.], 440) the indictment was for stealing a bar of iron found in the defendant's possession twenty-three days after it was missed by the owner, and the court held that though the time was no evidence of guilt it might be considered by the jury in connection with other circumstances.

A saddle found in defendant's possession six months after it was stolen was the subject of indictment in *Jones* v. *State* (26 Miss. 247). The court held that this raised no presumption of guilt.

In *Warner* v. *State* (1 Iowa, 106) several traps, a boat hook and other articles were found in defendant's possession eighteen months after they were stolen. The court held this not sufficient to shift the burden of proof.

In *Rex* v. ———— (2 C. & P. 459) possession sixteen months after goods were stolen was held not to call upon the prisoner for for explanation.

These cases justify the summary of the law which is found in Burrill on Circumstantial Evidence (p. 448): "But what shall be considered a *recent* possession cannot be absolutely determined by any rule, but must depend not only upon the mere lapse of time, but upon the nature of the articles stolen, and the considerations whether they are of a description likely to pass rapidly from hand to hand, or such as the party might, from his situation in life, or the nature of his vocation, become innocently possessed of."

Judge DOE, in *State* v. *Hodge* (50 N. H. 517), stated an ideal instruction: "There is a general rule of law which finds guilt from the recent possession of stolen property; but whether the possession is recent or not depends upon the nature of the property. There is no rule of law which divides the infinite varieties of property into three hundred and sixty-five or any other number of kinds, and requires

you or me to draw the presumption, from the possession of one kind one day after the theft; from the possession of another kind two days after, and so on to the end of the list; that allotment of time and variety is left to my judgment; and, in my judgment, the time and variety, in this case, are sufficient to raise the presumption; this presumption, found by me, is binding upon you." In that case a watch and chain had been stolen and were found the next morning in a house occupied by the defendant.

Tried by this rule, we think the charge of the learned county judge was not sufficiently explicit. It failed to submit to the jury the question whether the defendant's possession of the sack was sufficiently recent to justify a conviction. The pawn ticket was an instrument which might readily pass from hand to hand, and the purchase of it by the defendant, according to his testimony, if uncontradicted, was a sufficient explanation of his possession of the sack. The only evidence which in any way tends to contradict this explanation was the testimony of Perrott, that the defendant told him that he got the ticket from a man who was in State prison while the defendant was a keeper there, and that he had met him and purchased the ticket at a saloon on Eighth avenue, in the city of New York. The defendant said that he got it at D'Arcy's saloon, on Eighth avenue, and D'Arcy, called as a witness by the State, only testified that he never saw the defendant buying a pawn ticket at his place. We do not think this amounts to a contradiction of the defendant's explanation, and it is evident that his testimony on this subject was absolutely uncontradicted. If true, it was a sufficient explanation of his possession of the goods, and no guilty knowledge that the sack was stolen can be predicated on that possession. The indictment should have been dismissed, or an acquittal directed.

The court also refused the request of the defendant's counsel to charge that the stolen property must have been received by the defendant from the thief, and not from one who received it from the thief, and the defendant excepted. Mr. Wharton, in his work on Criminal Law (Vol. 1, § 990a), lays down the proposition and cites abundant authority for this request when he says: The reception must be from the thief or the thief's agent.

In *Foster* v. *The State* (106 Ind. 272, 277) the court held as follows: "To render the offence of receiving stolen goods possible,

the goods must retain their stolen character at the time the party charged received them. If, therefore, the goods have been transferred from the thief to a guilty receiver, the latter takes as a receiver, and not as a thief. In his hands, and as to him, the goods are not stolen. In his hands the character of the goods is derived from his offence, and not from the offence of the person who stole them, so that one who receives such goods from him, however wickedly, is not guilty of receiving stolen goods within either the common law, or statutory definition of that offence, unless such second or subsequent receiver receives the goods under circumstances which connect him with the thief. 2 Bishop Crim. Law, section 1140; Whart. Crim. Law, section 983; *Kaufman* v. *State*, 49 Ind. 248; *Owen* v. *State*, 52 Ind. 379. · Hence, to sustain the charge of having received stolen goods, it must be proven that the goods were received, either directly or indirectly, from the thief, knowing them to have been stolen."

There was no evidence whatever in the case at bar to show that the man from whom the defendant purchased the ticket was the thief or his agent, or in complicity with the thief.

The learned county judge also appears, by a reading of the entire charge, to have placed too much stress upon the necessity of the defendant's explaining his possession of the goods, without giving sufficient weight to his right to the presumption of innocence until the close of the trial.

We think that the errors referred to justify a reversal of the judgment of conviction. It is of the last importance that every person charged with crime should have a fair trial, with the continuing presumption of his innocence until the rendition of a verdict, and the charge of the learned county judge not only destroyed that presumption, but was calculated to impress the jury with the belief that the defendant was called upon to explain his possession of the goods when the evidence gave rise to no presumption of the defendant's knowledge that the sack was stolen at the time he purchased the ticket.

We are confirmed in this conclusion by the fact that we are not clear that injustice was not done to the defendant by the numerous questions addressed by the district attorney to witnesses. It can hardly be assumed that the learned district attorney and his able

assistant are ignorant of the rule of evidence that an objection once distinctly raised and overruled need not be repeated by an offer of other evidence of the same class (*Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256; *Church* v. *Howard*, 79 id. 415), and yet, after the court had excluded answers to questions about other alleged transactions of the defendant, not connected with the indictment, similar questions were asked of other witnesses, which were objected to, and the testimony excluded. It is not necessary to decide whether the evidence was, or was not, admissible, as it was excluded, and that was the law of the case upon which the verdict was rendered. An examination of the record tends to show that whatever was the purpose with which such questions were asked, they had a tendency to throw an atmosphere of suspicion about the defendant. A few examples out of many will suffice for illustration. On cross-examination the defendant was asked: "Was this the first pawn ticket that you ever dealt with?" The court excluded the evidence. "Q. Were you in the habit about this time of dealing in watches and diamonds? * * * Excluded by the court unless it is from the same party. * * *. Q. Did you sell a watch about this time to William H. Martin? * * * Excluded. * * * Q. Did you sell a diamond about this time to Daniel ———? * * * Excluded. * * * Q. Did you, about this time, sell a diamond to George Proudfoot? * * * Excluded. * * * Q. Did you about this time sell a diamond to Norman Dubois? * * * Excluded."

The repetition of so many questions of a similar character, after the first ruling of the court upon one of them, seems to us a very improper abuse of the duty which a district attorney owes at once to the State and to a citizen charged with crime. The position of the prosecuting attorney is semi-judicial, and he is called upon to exercise his duty with fairness and discretion. It is his official duty to see that all trials are prosecuted so as to shield the innocent, as well as to convict the guilty. As we have already said, every man is entitled to the presumption of his innocence of the crime with which he is charged, and it has long been an adage that it is better that many criminals escape conviction than that any one should be convicted of a crime of which he is innocent.

It can hardly be said that a jury of ordinary intelligence would

not be unfavorably, even though unconsciously, impressed as to the character of the defendant by such questions, which, when propounded by the district attorney, supported by all the prestige and public confidence which attach to his office, gave force to the belief that he would not ask such questions without himself believing in the existence of the facts to which they related. This being true, the repetition of questions cognate with those already excluded was improper and unjustifiable.

The judgment and conviction should be reversed.

WOODWARD, J., concurred.

Judgment reversed and new trial granted.