### PEOPLE v. MOORE.

(Supreme Court, Special Term, New York County. July 19, 1910.)

CRIMINAL LAW (§ 1073*)—APPEAL—CERTIFICATE OF REASONABLE DOUBT.

    On a motion for a certificate of reasonable doubt on a proposed appeal from a conviction under Penal Law (Consol. Laws, c. 40) § 2460, subd. 4, of knowingly receiving money for procuring, the case shown on an examination of the record *held* to entitle accused to the relief asked for.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. § 1073.*]

Belle Moore was convicted of a violation of Penal Law (Consol. Laws, c. 40) § 2460, subd. 4, and she moves for a certificate of reasonable doubt on a proposed appeal. Motion granted.

Karlin & Busch (Alexander Karlin, of counsel), for the motion.
Charles S. Whitman, Dist. Atty. (Robert C. Taylor, Asst. Dist. Atty., of counsel), opposed.

GIEGERICH, J. The defendant was convicted under an indictment which charged that she procured and placed in the custody of one George A. Miller two women for immoral purposes, to wit, to enter and become inmates of a certain house of prostitution in the city of Seattle, in the state of Washington, and to live a life of prostitution in such house, and knowingly received a sum of money for and on account of her procuring and placing such women in Miller's charge for such immoral purposes.

Section 2460, subd. 4, of the Penal Law (chapter 40 of Consol. Laws) provides as follows:

"Every person who shall knowingly receive any money or other valuable thing for or on account of procuring and placing in the custody of another person for immoral purposes any woman, with or without her consent, is punishable by imprisonment not exceeding five years and a fine not exceeding one thousand dollars."

A careful examination of the record has satisfied me that the relief asked for should be granted. All the evidence in the case showed that Miller, in whose custody the women in question were claimed to have been placed, had no intention of making use of them in a house of prostitution in Seattle or elsewhere, or of making any immoral use of them; but, on the contrary, that he was a person employed by the district attorney to procure evidence upon which convictions under the statute mentioned could be secured; and that the women in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

question were entirely safe while in his custody. As I read the statute, there is a serious question whether the word "knowingly" is limited, as seems to be claimed on behalf of the prosecution, to the receipt of money, or whether it extends, as is claimed on behalf of the defendant, to the entire statute, including knowledge that the women were to be used for immoral purposes. In this case, whatever Miller may have represented to the defendant as to his purpose to take these women to Seattle and place them in a house of prostitution, and whatever the defendant may have supposed and believed as to the immoral use that was to be made of them, it is plain that she could not have known of any immoral purposes on the part of the person in whose custody she placed these women if no immoral purposes existed on the part of such person. In People v. Jaffe, 185 N. Y. 497, 78 N. E. 169, 9 L. R. A. (N. S.) 263, where the defendant was convicted of receiving stolen goods, it appeared that before the defendant attempted to purchase the goods in question they had lost their character as stolen goods, having been previously restored to the owners, so that they were wholly within their control, and they were offered to the defendant by their authority and through their agency. The court held that, knowledge being a material ingredient of the offense, it was manifest that it could not exist unless the property in question had in fact been stolen or larcenously appropriated, and that no man can know that to be so which is not so in truth and fact, and that his belief is not enough and that his motive is immaterial.

I also entertain grave doubt whether there was not error in permitting the people to ask upon cross-examination of Alice Milton, one of the two women claimed to have been procured by the defendant and placed in the custody of Miller, whether she (Alice Milton) had not stated on a former occasion that she went to the defendant's apartment because one Sadie Isaacs had told her that the defendant would introduce her to a man who had a house in Seattle. The prejudicial effect of this testimony is apparent from the fact that the witness Milton had previously testified that she and the other woman (Belle Woods) claimed to have been procured had a conversation with Miller at the house of prostitution of which they were inmates, and at which conversation the defendant was not present, and at which Miller asked them to go to Seattle and made arrangements with them to go, and that they had told him they would go. Substantially the same testimony on this point was given by the witness Belle Woods when she was called upon to testify. As the matter stood, therefore, the evidence on behalf of the people was that the defendant procured the two women for Miller; whereas, the evidence of these women themselves was that Miller himself procured their consent to accompany him. The question as to the witness' former statement to Sadie Isaacs was asked ostensibly to contradict the testimony that the witness gave upon the stand; but it went further than this, and improperly brought before the jury a statement made by Sadie Isaacs, who was in no wise connected with the defendant, concerning a purpose of the defendant, and may easily have been the controlling circumstance which determined the finding of the jury on the point.

I also entertain grave doubt whether prejudicial error was not committed in charging the jury. The court charged the jury as follows:

"The defendant comes to the bar with the presumption of innocence."

A request was made for a further charge that "the presumption of the defendant's innocence exists from the beginning to the end of the trial, and is her property throughout the trial," which was declined. The Code of Criminal Procedure provides (section 389) that "a defendant is presumed to be innocent until the contrary is proven." In Abbott's Trial Brief, Criminal Cases (2d Ed.) p. 658, it is said that the presumption of innocence accompanies an accused person throughout the trial. In People v. Ray, 36 App. Div. 389, it is said, at page 394, 55 N. Y. Supp. 410, that a person indicted for an offense is entitled to the benefit of this presumption until the case is submitted to the jury, and that, although the evidence may be such as to call upon the defendant to explain, nevertheless the presumption of his innocence continues throughout the trial, and the burden of proof remains on the prosecution at the close of the evidence just as it did at the opening, citing Farmers' Loan & Trust Co. v. Siefke, 144 N. Y. 354, 39 N. E. 358.

Other grounds are urged in support of the application, but it is not necessary to discuss all of them.

For the reasons above stated, I am satisfied that the certificate should be allowed.

Motion granted. Give notice of settlement.