## Barney Graff v. The People of the State of Illinois.

1. JURORS—*Where Error in Overruling Challenges for Cause is Not Cause for Reversal.*—Errors committed in the trial court in overruling challenges for cause to jurors will not work a reversal, even though the defendants had exhausted their peremptory challenges, unless it is fur-

Graff v. The People.

ther shown that an objectionable juror was forced upon them and sat upon the case after they had exhausted their peremptory challenges.

2. HUSBAND AND WIFE—*Where the Rule that Husband and Wife Are Incompetent Witnesses for or Against Each Other Has No Application.* —Where the husband has pleaded guilty to a criminal charge, the rule of law that in criminal cases husband and wife are, in general, incompetent witnesses either for or against each other. has no application.

3. CORPORATIONS—*The Statutory Provision that Prima Facie Proof of the Existence of a Corporation May be Made by User, Not Confined to Illinois Corporations.*—Section 486 of the criminal code, which provides that *prima facie* proof of the existence of a corporation may be made by user, is not confined to proof of the existence of an Illinois corporation.

4. CRIMINAL LAW—*No Merger of a Conspiracy with a Felony Where They Are Distinct Offenses.*—There is no merger of a conspiracy to burn insured property and obtain by false pretenses the insurance money, with the felony of burning the insured property with intent to injure the insurer. The crime of conspiracy was complete before the property was burned, and the burning was not a necessary part of that crime.

5. INSTRUCTIONS—*Singling Out and Calling Attention to the Testimony of Certain Witnesses.*—An instruction which singles out and calls special attention to the testimony of certain witnesses is erroneous.

Indictment, for conspiracy. Error to the Criminal Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed May 28, 1903.

STEDMAN & SOELKE, attorneys for appellant; IVY E. ROGERS and FRANCIS W. WALKER, of counsel.

CHARLES S. DENEEN, State's Attorney, and HARRY OLSON, Assistant State's Attorney, for defendant in error; HAYNIE R. PEARSON and SAMUEL W. JACKSON, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

Barney Graff, Ben Ettelson, Dave Ettelson, Fred Alexander and George Samels were indicted for conspiracy to obtain by false pretenses the personal goods, funds, money and property of the amount and value of $1,500 of the Buffalo German Insurance Company, a corporation organized and existing under and by virtue of the laws of the State of New York, and a large amount of personal goods, funds, money and property of the value of $1,500, the property of the Rochester German Insurance Company, of Rochester,

New York, a corporation organized and existing under and by virtue of the laws of the State of New York. The defendants pleaded not guilty, but subsequently said Samels and Alexander withdrew their pleas of not guilty, pleaded guilty, and testified for the prosecution. Said Ben Ettelson, during the progress of the trial and when the state's evidence had been mainly offered, withdrew his plea of not guilty, entered a plea of guilty, and was called as a witness for the state. The trial then proceeded, and the jury rendered a verdict finding the defendant Dave Ettelson not guilty, and the defendant Graff guilty of conspiracy to obtain money by false pretenses, as charged in the indictment, and fixed his punishment at a fine of $2,000 and imprisonment in the penitentiary, on which verdict the court rendered judgment, to review which this writ of error has been prosecuted by Graff.

For plaintiff in error it is claimed the court erred in overruling his challenge for cause of the juror Edward Yaeger, but we are of opinion the ruling is no cause for reversal. If it be conceded that the challenge for cause should have been allowed, the juror was later challenged peremptorily, and the record fails to show that any juror objectionable to plaintiff in error was by reason thereof forced upon him. On this subject the Supreme Court said in the case of Spies v. The People, 122 Ill. 258:

" We can not reverse this judgment for errors committed in the trial court in overruling challenges for cause to jurors, even though the defendants had exhausted their peremptory challenges, unless it is further shown that an objectionable juror was forced upon them and sat upon the case after they had exhausted their peremptory challenges."

A second claim is made that there was error in permitting a witness, Mrs. Alexander, the wife of the defendant Fred Alexander, who pleaded guilty, to testify on rebuttal in corroboration of testimony of her husband, claimed to have been prejudicial to plaintiff in error. It is contended that although Alexander had pleaded guilty, he had not been sentenced at the time his wife testified, and he might thereafter, with leave of the court, have with-

Graff v. The People.

drawn his plea and stood trial; that in conspiracy the act of one is the act of all, and evidence against one is evidence against all.

While it is true, as a general proposition, that in criminal cases husband and wife are, in general, incompetent witnesses either for or against each other, the rule of law has no application here, and no case is cited by counsel which, in our opinion, supports the claim that it was error to admit Mrs. Alexander's testimony. As this record stands Alexander had pleaded guilty, and the evidence of his wife could have had no bearing upon the case so far as he was concerned. The reason for the rule failing, it can have no application to this case. 1 Greenleaf on Evidence, Sec. 355; Wharton's Crim. Evid., Sec. 445; State v. Anthony, 1 McCord, 285 (S. C.); Thompson v. Commonwealth, 58 Ky. (1 Metc.) 16; Love v. People, 160 Ill. 501.

A third claim for reversal is argued, viz., that there is no sufficient proof that the two corporations, alleged by the indictment to have been defrauded by the false pretenses and conspiracy charged, existed, and in this connection especial reliance is placed upon the case of Sykes v. The People, 132 Ill. 45, Bromley v. The People, 150 Ill. 302, and Kossakowski v. The People, 177 Ill. 565. The Sykes case has no application so far as concerns the statute, section 486 of the criminal code, which provides that *prima facie* proof of the existence of a corporation may be made by the user. The Bromley case in effect holds that the general rule is that descriptive averments in an indictment must be proved as laid, and the other case cited decides that certain enumerated facts shown by the evidence were sufficient proof of user to show the *de facto* existence of the corporation which was in question.

Conceding that the allegations of the indictment should be proved as laid, viz., that the respective corporations mentioned in the indictment were corporations organized and existing under and by virtue of the laws of the State of New York, the evidence as to user, which need not be set out in detail, is in our opinion sufficient to establish the

existence of the said corporations *de facto*, and that they respectively were organized and existing under the laws of the State of New York. Both these corporations, as appears from the evidence, as corporations of New York, made and issued policies of life insurance through their agent, and after there was a loss, still acting in a corporate capacity, compromised and adjusted the same and paid the amount of such loss as adjusted to the insured. In the case of Kincaid v. The People, 139 Ill. 213–6, decided with regard to proof of user in criminal cases under the statute, the court, among other things, say:

"The obvious purpose of this statute is to avoid the necessity, in the first instance, of proving the legal existence of the corporation whose property has been stolen or burglarized, etc. The language is broad and comprehensive, including all criminal prosecutions involving proof of the legal existence of a corporation, and is not, as is supposed, nor can it be, by any fair construction, confined to proof of the existence of an Illinois corporation only. By the statute of this state, corporations organized under the laws of other states are permitted to do business here, and there is no warrant for saying that user within the state shall be sufficient proof of the existence of an Illinois corporation, and shall not be *prima facie* evidence of the existence of corporations existing by virtue of the laws of other states and doing business within this state." See also, case of People v. Hughes, 29 Cal. 258; Calkins v. State, 18 Ohio St. 366–9, and cases cited; Fleener v. State, 58 Ark. 98–102, and cases cited; State v. Grant, 104 N. C. 908, and cases cited.

A further contention made is, in substance, that the indictment charges the defendants with a misdemeanor, whereas the evidence tends to show, and, as it is claimed, does show, that if a misdemeanor is established thereby, it also involves the commission of a felony, and therefore the misdemeanor is merged in the felony, and plaintiff in error should have been discharged. We think the claim is not tenable.

The indictment, in effect, charges the defendants with conspiracy to obtain money by false pretenses, which is a misdemeanor, and the evidence shows that in the consummation of this conspiracy at least two of the defendants

committed the crime of arson under our statute, with intent to defraud the insurance companies.   (Sec. 48, Ch. 38, 1 S. & C.)   The latter crime, as we view it, was a mere circumstance or incident of the conspiracy—was only an act on the part of the conspirators which tended to establish the crime charged, namely, the misdemeanor.   This view, it is claimed, would result in the plaintiff in error being liable to be punished twice for the same offense.   The authorities on the point are somewhat conflicting, some being to the effect claimed by counsel.   Commonwealth v. Kingsbury, 5 Mass. 106; People v. Mather, 4 Wend. (N. Y.) 230–266; State v. Hattabough, 66 Ind. 223–227; Bishop's New Crim. Law, Sec. 815.

Especial reliance seems to be placed by counsel for plaintiff in error upon the case of Hoyt v. The People, 140 Ill. 588, but we think the case is not in point.   The indictment there alleged a conspiracy to burn an elevator, and that in pursuance of such conspiracy the defendants did burn it.   The court held that the offense charged was arson, and while it says that the conspiracy to burn is merged in the act of burning, we think that has no application in the case at bar, in which the indictment clearly charges a misdemeanor, not a felony, and as to the evidence the agreement to burn and the burning are mere incidents to the crime charged, the latter being a necessary element in the felony in question, but not in the conspiracy.

Other authorities, which we think are sustained by the better reason, are to the effect that there is no merger when the conspiracy is a distinct offense from the felony; that where the object of the conspiracy is to commit a misdemeanor only, and it be committed, the offense of the conspiracy is not merged.   3 Greenleaf, Evid., Sec. 90, and cases cited; 1 Bishop's New Crim. Law, Secs. 812, 814, 815; Johnson v. State, 26 N. J. Law, 311–24; Commonwealth v. O'Brien, 12 Cush. 84; State v. Murray, 15 Me. (3 Shep.) 100.

Section 48 of the statute *supra* is; viz.:

" Whoever willfully and maliciously burns or sets fire to or causes to be burned or set on fire any building or any

goods, wares or merchandise, or other chattels which are at the time insured against loss by fire, with intent to injure the insurer, whether such person is the owner of the property burned or not, shall be imprisoned in the penitentiary not less than one nor more than ten years."

The gist of the crime under this statute, which is a felony, is the burning of insured property with intent to injure the insurer. No doubt, under the evidence, the defendants intended, as part of the conspiracy charged, to burn the property insured, but the crime under this statute was not complete until the property was burned, and then the only parties to the burning were Graff and Ben Ettelson; while in the conspiracy charged three others were concerned, namely, Dave Ettelson, Alexander and Samels, of whom the latter two pleaded guilty. The object of the conspiracy was by false pretenses to get the money from the insurance companies, and the burning of the property was a mere incident, it is true—a contemplated act to be done in carrying out the conspiracy, but not necessary to the complete crime. The crime of conspiracy was complete before the property was burned, and the burning not being a necessary part of that crime, it follows, in our opinion, that the offense of conspiracy is not merged in the felony. Also, Alexander and Samels, who were guilty of the conspiracy, took no part in the felony beyond the fact that they intended it should be committed. That was not sufficient to convict them of the felony, and for that reason we think the conspiracy was not merged in the felony.

Moreover, section 48 was enacted and in force in the year 1869, while the conspiracy statute was not passed until 1874. They clearly create distinct and separate offenses and should be construed to exist together, as was no doubt intended by the legislature. Johnson v. People, 123 Ill. 624–8.

Futhermore, we think that the plaintiff in error is in no position to complain that he is not here charged with the felony instead of a misdemeanor. Mr. Bishop, in his New Criminal Law, Vol. 1, Sec. 815a, says, in speaking of the duty of a prosecuting officer, that it is not "his duty to

Graff v. The People.

convict every prosecuted person of the highest offense which can be carved out from the mass of his entire evil doings." The same author, in section 815, in speaking upon the subject of a misdemeanor being merged in a felony, and the duty of the prosecuting power in that regard, says:

" If its pleasure is to overlook a felony, even though it was the instrument by which a misdemeanor was accomplished, the clemency, according to the ordinary course of legal things, and, it would appear, according also to the dictates of the mere uneducated reason, is not a wrong to its recipient whereof he can complain."

Near the close of the evidence for the state the defendant Ben Ettelson, in open court, withdrew his plea of not guilty, and was then called as a witness in behalf of the prosecution, without any previous notice to Graff that Ettleson would testify. This, it is claimed, was error because of the surprise to Graff, and for the further reason that, as it is claimed, the statute gives a person accused of crime a right in advance to the names of the witnesses who will be called to testify against him. It is conceded by counsel for plaintiff in error that it was within the discretion of the court to allow Ettelson to testify when he did; but because of the fact, as it is alleged, that Ettelson had led Graff to believe he would not testify in the case, it was erroneous for the court to exercise its discretion as against plaintiff in error under these circumstances. No authority in point is cited in favor of the claim, and we see no reason why there was any error in the court's ruling as it did. In fact, there is nothing in the record to show that at the time Ettelson withdrew his plea of not guilty and entered a plea of guilty and was called to testify by the state, either Graff or his counsel expressed any surprise or made any objection on that account to his testifying. The first surprise expressed by Graff in this respect was upon the motion for a new trial made some three weeks after the verdict was rendered.

It is also said that the court erred in admitting in evidence People's Exhibit 13, which appears to have been a paper drawn up by Alexander, purporting to give a list and

values of certain fixtures claimed to have been destroyed by the fire, and used in making the proofs of loss. It appears that the paper was exhibited to the defendant Samels and the insurance adjuster. We think it competent as an act of the defendant Alexander, it being made pursuant to his talk with Graff and as bearing upon the crime charged.

The court gave in all sixty-seven instructions, which we have carefully read in the light of criticisms of instructions 5, 8, 47 and 68, which were given, and instructions 13 and 15, which were asked by defendants and refused. The instructions as a whole seem to cover quite fully all the questions in the case. Some of them are more favorable to plaintiff in error than he was entitled to under the law. We think there was no error in instructions 5 and 8, and that the jury, with the exceptions hereinafter referred to, was quite fully and fairly instructed. Instructions 15 and 13 refused, are duplicates, and we have been unable to discover any evidence in the case which would justify their being given. Instruction 51, of which complaint is made, appears to have been given at request of the defendant, and can not therefore be any cause for reversal.

Instruction 47 singles out Ben Ettelson and calls special attention to him as an accomplice, and to his testimony as such, and in effect tells the jury that if they believe his testimony to be true, they can act upon it as true, and it would justify a conviction. We think the instruction should not have been given, because it singles out Ettelson as an accomplice, calling especial attention to his testimony, while two other witnesses who were accomplices testified; but it should not work a reversal, for the reason that, upon the whole evidence, the jury could not, in our opinion, acting reasonably, have reached any other verdict than it did.

The sixty-eighth instruction is erroneous, in that it permits a conviction if the jury thought the evidence showed a conspiracy to defraud any one of the corporations mentioned in the indictment, whereas the charge was of defrauding two corporations jointly. This error, however, is no

cause for reversal, since the proof is clear as to both corporations.

Finally, the claim is made that the court should have granted a new trial by reason of certain newly-discovered evidence set out in the affidavits of Graff and five other persons, which were read upon the motion for a new trial. The evidence referred to in these affidavits is merely cumulative in its nature, by no means conclusive, as we regard it, and would not, in our opinion, in all probability, had it been before the jury, have made any difference with its verdict. When newly-discovered evidence is relied upon for a new trial, the court is justified in denying a new trial where such evidence is merely cumulative and in no way of a conclusive character.

The whole case considered, we think there is no such error as would justify a reversal of the judgment of the Criminal Court, and it is therefore affirmed.