## Patrick H. O'Donnell et al. v. The People of the State of Illinois.

1. CONSPIRACY—*Gist of the Crime.*—The gist of the crime of a conspiracy to confederate or agree to accomplish an unlawful purpose is the agreement to do the illegal act, and not the means agreed to be used to carry out the unlawful agreement. The latter of itself is a separate and distinct offense from the former.

2. SAME—*Indictable at Common Law.*—A conspiracy to do anything opposed to the principles of right and justice, or which has for its object the perversion or obstruction of public justice, is a criminal offense and indictable under the common law.

3. SAME—*To Commit a Statutory Offense is Indictable.*—A conspiracy to commit a statutory offense is indictable.

4. SAME—*No Defense to Prosecution for Jury Bribing that the Court Had No Jurisdiction of the Case.*—It is no defense to a prosecution for conspiracy to bribe a jury that the court hearing the case in which the jury attempted to be bribed were sitting, did not have jurisdiction of such case.

5. SAME—*Offense Complete When the Corrupt Agreement is Made.*— When the conspiracy charged is to commit an unlawful act, the offense is complete when the corrupt agreement is made, and in no way depends upon any overt act done or means used or agreed to be used to consummate the unlawful agreement.

6. SAME—*Where a New Trial May be Granted to One Defendant and Judgment Affirmed as to Others.*—Where in a conspiracy trial there is a separate verdict and judgment as to each of the defendants, there may be an affirmance or reversal as to one, or any number, or all.

7. TRIALS—*Expression of Opinion by the Court.*—Remarks of the court amounting to an expression of opinion from which the jury might infer that the testimony of a witness is unworthy of credit, are improper.

8. SAME—*Improper Expression of Opinion by Counsel.*—An expression by counsel that the state had more evidence of conspiracy and of bribery in the case at bar than had been produced in any other case of that character in his recollection and experience, that the evidence

O'Donnell v. The People.

overwhelmed everything else in public knowledge and that he would modify what he had said by saying in the experience of mankind, is improper, as being the expression of his personal opinion as to the weight of the evidence in the case as compared with all other cases.

9.  SAME—*Improper Conduct of Counsel in Examining Witnesses.* — It is improper for counsel, when merely surprised by the evidence of a witness, to remark that he is an unwilling witness, and follow up such remark by an examination calculated to impress the jury strongly that he is an unwilling witness, and to cause the jury to give undue weight to his evidence bearing upon the conspiracy charge.

10.  SAME—*Improper Remarks of Counsel in Addressing the Jury.*— Counsel in addressing the jury spoke of two defendants as the "prime arch conspirators in this case," of another as "the notorious 'Bill' Gallagher" as an "infamous man, an ex-convict, who had worn the striped livery of the state," and of another said, among other things, "You thought you might take the short cut to fame and success, and grasping on the ladder of fame the rotten rung of corruption, you have fallen to the ground in disgrace and dishonor. * * * You have been unfaithful to your mother. * * * You have been untrue to the religion that nurtured you to better ideas, and you have disgraced your profession and American citizenship," etc. *Held*, improper as being in no sense argument, and only calculated to bias and prejudice the jury against the defendants.

11.  SAME—*Improper Course of Examination by Counsel.*—It is improper for counsel in his examination of a witness to propound questions in regard to damaging facts in such a manner and with such persistency and show of proof, as to impress the jury that there must be something wrong even though the prisoner fully denies it, and there is no other evidence, and the witness is not refractory or unwilling.

12.  SAME—*Duty of State's Attorney in Conducting Prosecutions.*— The position of the state's attorney being semi-judicial, and it being his duty to be fair and just in his conduct of trials, both to the state and the accused, he has no right to bring before the jury, under the guise of argument, anything not shown by the evidence in the case, nor to indulge in personal abuse of a defendant or witness, nor to characterize him as a criminal, a perjurer or convict, though there may be basis for it in the evidence.

13.  EVIDENCE—*Of Conviction of a Felony as Affecting Credibility— Pardon Should Also be Shown.*—The statute permits evidence of a conviction of a felony as bearing upon the credibility of a witness, but it is both material and important, when such fact has been shown, that the jury should also know, as affecting his credibility, that he has been pardoned, if such be a fact.

14.  SAME—*Admissible When Part of the Res Gestœ.*—Evidence of defendants in a prosecution for conspiracy to corrupt a jury is admissible when it tends to contradict the state's case in connection with certain alleged acts done pursuant to the conspiracy and part of the *res gestœ.*

15. INSTRUCTIONS—*That the Evidence of a Conspiracy Will in General be Circumstantial, Erroneous.*—An instruction stating that as matter of law, the evidence in proof of conspiracy will in general be circumstantial, is erroneous.

16. SAME—*That Mere Knowledge of a Conspiracy, with Passivity, Will Convict of Conspiracy, Erroneous.*—An instruction in effect that a mere knowledge, with passivity on the part of the defendants, will be sufficient to convict them of conspiracy, is erroneous. The mere knowledge, acquiescence or approval of an act, without co-operation or agreement to co-operate, is not enough to constitute the crime of conspiracy. There must be something showing active participation of some kind by the parties charged.

17. SAME—*Certain Conduct of Judge in Giving, Not Error.*—While the court was reading the instructions to the jury a part of one sentence of an instruction having been read by the judge, he tore it from the other instructions, laid it aside, erased the word "Given," which had been written upon it, and marked it "Refused," and stated orally to the jury, "that instruction should be out." It is not urged that it was error to refuse the instruction, and the part of it which was read to the jury was not sufficient to convey to them any idea of the import of the instruction— was meaningless. *Held*, that the fact that the court stated orally to the jury that the "instruction should be out," was not an instruction to them upon the law, and was not error.

18. CRIMINAL LAW—*Test to Determine Whether an Offense is the Same Under Two Indictments*—The test to determine whether an offense is the same under two indictments is whether, if what is set out in the second indictment had been proved at the trial under the first, there could have legally been a conviction. When there could have been, the second may not be maintained; when there could not, it may be.

19. STATUTES—*Sec. 408, Div. 11 of the Criminal Code, Construed.*—Under Sec. 408, Div. 11 of the Criminal Code, which provides in effect that an indictment shall be sufficient which states the offense in the terms and language of the statute creating the offense, or so plainly that the nature of the offense may be easily understood by the jury, it is not sufficient to follow the language of the statute creating an offense if its words do not describe the act or acts constituting such offense, but the indictment in such case must be sufficiently certain and particular in its allegations as to the act or acts with which the defendant is charged, that he may have reasonable notice thereby of the precise offense charged against him.

20. PRACTICE—*Absence of Counsel from Court Must Be Made to Appear by Bill of Exceptions to be Availed of.*—When it appears from the record that the defendants, as well in their own proper person as by their counsel, came into court on the day in question, and does not state that they were at any time absent therefrom, their presence in court can not be denied by affidavit, but can only be made to appear by a recital in the bill of exceptions.

O'Donnell v. The People.

21. APPELLATE COURT PRACTICE—*What is Necessary to Justify This Court in Reversing on the Ground that the Evidence is Insufficient.*—To justify this court in reversing on the ground that the evidence is insufficient, it must appear that the finding of the jury is not sustained by the evidence or that it is palpably contrary to the decided weight of the evidence.

22. WORDS AND PHRASES—" *Illegal," as Used in the Statute, is Synonymous with " Unlawful."*—The word " illegal " as used in the statute is synonymous with " unlawful," and means contrary to any law, whether criminal or civil.

Conspiracy.—Error to the Criminal Court of Cook County; the Hon. THEODORE BRENTANO, Judge presiding. Heard in this court at the October term, 1902. Affirmed in part, reversed in part and remanded. Mr. Justice WINDES dissenting. Opinion filed November 12, 1903. Rehearing denied November 25, 1903.

Statement by the Court.—At the April term, 1902, of the Criminal Court of Cook County, an indictment was returned against the plaintiffs in error, which consists of five counts, and after the formal commencement is in substance as follows:

The first count avers:

" On the 14th day of April, 1902, at a court of a justice of the peace, in the city of Chicago and county of Cook, aforesaid, held and presided over by one George H. Woods, a justice of the peace in and for the town of North Chicago, in said city, county and state, a certain cause, in which the City of Chicago was plaintiff, and the Chicago Union Traction Company, a corporation, was defendant, was tried before a jury of the county, and before said trial one William J. Gallagher, one Patrick H. O'Donnell, one James T. Brady, one John O'Donnell, one Hammond T. Lawrence, one Herbert Rothery and one Cyrus S. Simon, late of the county of Cook, aforesaid, did, on the 14th day of April, A. D. 1902, in said county of Cook and State of Illinois, aforesaid, unlawfully, feloniously, fraudulently, maliciously, wrongfully and wickedly conspire, combine, confederate and agree together with one Walter C. Jones, one Homer Michaels, one Clark Rolfe and one William F. Sheridan, by promised rewards and other ways and means, unlawfully to procure a verdict to be given for the defendant in said cause, and to bring about the same, to cause and enable the said Hammond T. Lawrence, the said Homer Michaels, the said Clark Rolfe and the said William F. Sheridan, for

divers wicked considerations, to be sworn and serve as jurors in the trial of said cause, and give and procure to be rendered a verdict for the defendant therein; in pursuance of which unlawful agreement, conspiracy and confederation, the said Hammond T. Lawrence, the said Homer Michaels, the said Clark Rolfe and the said William F. Sheridan, afterward, on the day and year first above mentioned, there, by unlawful ways and means, were procured and caused to be called and sworn as jurors in the trial of said cause, and together with the other jurors sworn to try the same, did give their verdict for the defendant therein, contrary to the law and against the peace and dignity of the people of the State of Illinois."

The second count avers:

" The grand jurors aforesaid further present that on the 14th day of April, A. D. 1902, at a court of a justice of the peace, in the city of Chicago and county of Cook, aforesaid, held and presided over by one George H. Woods, a justice of the peace in and for the town of North Chicago, in said city, county and state, a certain cause, in which the City of Chicago was plaintiff, and the Chicago Union Traction Company, a corporation, was defendant, was tried by a jury of the county, and before said trial one William J. Gallagher, one Patrick H. O'Donnell, one James T. Brady, one John O'Donnell, one Hammond T. Lawrence, one Herbert Rothery and one Cyrus S. Simon, late of the county of Cook aforesaid, did, on the 14th day of April, A. D. 1902, in said county of Cook, in the State of Illinois, aforesaid, unlawfully, feloniously, fraudulently, maliciously, wrongfully and wickedly conspire, combine, confederate and agree together with one Walter C. Jones, one Homer Michaels, one Clark Rolfe and one William F. Sheridan, to do a certain illegal act, then and there injurious to the administration of public justice, to wit : to then and there summon and place, and cause to be summoned and placed and sworn as jurors to try the issues in a certain cause in which the City of Chicago was plaintiff, and the Chicago Union Traction Company, a corporation, was defendant, then pending for trial, in a court of a justice of the peace, before said George H. Woods, a justice of the peace in and for the town of North Chicago, in said county and state, as aforesaid, the said Hammond T. Lawrence, the said Homer T. Michaels, the said Clark Rolfe and the said William F. Sheridan, for the unlawful and wicked purpose of procuring a verdict on behalf of the defendant in said cause, regardless of the evi-

O'Donnell v. The People.

dence that might be produced in court at the trial thereof, contrary to the statute," etc.

The third count is substantially like the second, except that it concludes, "contrary to the law," etc.

The fourth count is in substance the same as the first count down to where the name of Sheridan first occurs in the count, and then instead of the words "by promised rewards and other ways," etc., the count proceeds. viz.: " to do a certain illegal act then and there injurious to the administration of public justice, to wit, to have and to cause to have the said Hammond T. Lawrence, the said Homer Michaels, the said Clark Rolfe, the said William F. Sheridan, the said Herbert Rothery, one Herman M. Green and one Charles Mathews, summoned to serve as jurors in the trial of a cause in which the City of Chicago was plaintiff and the Chicago Union Traction Company, a corporation, was defendant, then and there pending for trial in a court of a justice of the peace, before said George H. Woods, a justice of the peace in and for the town of North Chicago, in said county and state aforesaid, for the unlawful and wicked purpose of having the persons who might be selected from among them, who might be so summoned, sworn as jurors to try said cause and render a verdict for the defendant, regardless of the evidence that might be produced at the trial of such cause, contrary to the statute," etc.

The fifth count is similar to the fourth, except that it concludes "contrary to the law," etc.

Motions were made by each of the plaintiffs in error to quash each count of the indictment, setting forth numerous reasons therefor, which motions were respectively overruled and exceptions preserved, whereupon each of the plaintiffs in error pleaded "not guilty." and severally moved that the state's attorney be directed to file a bill of particulars, which motions were supported by the sworn petitions of each of the plaintiffs in error, but they were likewise overruled and exceptions preserved.

A trial was had before the court and jury, commencing on June 12th, which resulted, on the following June 28,

1902, in a verdict finding each of the plaintiffs in error severally guilty of conspiracy in manner and form as charged in the indictment, and fixing their punishment as follows: Gallagher, imprisonment in the penitentiary, and each of the other plaintiffs in error a fine, naming the amount of each fine. Motions for new trial were made by each of the plaintiffs in error, pending the hearing of which a second indictment against the plaintiffs in error Gallagher and Simon, and others not alleged to be parties to the conspiracy set out in the case at bar, charging them with a conspiracy which it is claimed is identical with the conspiracy charged in the indictment hereinabove set out, except for the names of certain alleged conspirators therein mentioned and the date of the conspiracy charged, came on for hearing. This last indictment is numbered 65,427, and the indictment in this case is numbered 65,211. To the indictment in case No. 65,427 said Gallagher and Simon entered pleas of guilty, and said Simon also entered a plea of *nolo contendere* on July 19, 1902, whereupon the state offered certain evidence, at the conclusion of which the court fined the said Gallagher and Simon each $2,000, which they paid in open court. Thereupon said Gallagher and Simon moved the court in this case, No. 65,211, for a discharge, and offered to read in support of their motion an affidavit made by them in which was embodied a transcript of the evidence heard by the court in case No. 65,427, which offer and motion the court overruled. In the case at bar the said Gallagher and Simon then each moved for leave to file certain pleas in bar, setting up their conviction under the indictment in case No. 65,427, and moved the court for leave to testify and give oral testimony in support of said pleas and to read their said affidavit, which motions were respectively overruled. Thereupon all the plaintiffs in error moved in arrest of judgment in the case at bar, which motions were respectively overruled and exceptions preserved, as well as exceptions to the several rulings of the court upon the motions of said Gallagher and Simon above mentioned. The court then rendered judgment upon each of the verdicts against each of the plaintiffs

in error, to which they respectively excepted. From these judgments this writ of error is prosecuted, but no briefs have been filed on behalf of the plaintiffs in error Lawrence and Rothery.

Since the cause was submitted to the court plaintiff in error Simon has moved the court to dismiss the writ of error as to him, which was done.

STEDMAN and SOELKE, attorneys for plaintiff in error W. J. Gallagher.

FRANCIS W. WALKER, attorney for plaintiff in error C. S. Simon.

A new trial can not be granted to one defendant in a conspiracy case and judgment affirmed therein as to the others. A new trial must either be granted to all or judgment must be affirmed as to all. Regina v. Gompertz, 58 E. C. L. Rep. 841; Isaacs v. State, 48 Miss. 234.

Mere passive knowledge of a conspiracy is not sufficient to sustain a conviction. Evans v. People, 90 Ill. 384.

A verdict based upon the uncorroborated testimony of accomplices who are contradicted by disinterested witnesses, none of whom are impeached, should not be sustained. Cohn v. People, 197 Ill. 482; Hoyt v. People, 140 Ill. 588; Campbell v. People, 159 Ill. 9; Lincoln v. Stowell, 62 Ill. 84; North Chicago St. R. R. Co. v. Fitzgibbons, 54 Ill. App. 385; Peaslee v. Glass, 61 Ill. 94.

The offense for which plaintiffs in error Gallagher and Simon were indicted and convicted in the case at bar is the same offense for which said Gallagher and Simon were formerly convicted and punished in case No. 65,427, under the rules governing identity of offense, which are as follows :

First. Whether, if what is set out in the second indictment had been proved at the trial under the first, there could have been legally a conviction; when there could have been, the second can not be maintained; when there could not, it can be. Guedel v. People, 43 Ill. 230; Hite v. State, 9 Yerg. 357; People v. Warren, 1 Parker, 338; Peo-

ple v. Allen, Id. 445; Durham v. People, 4 Scam. 172; Com.
v. Grubbs, Thacher's Crim. C. 202.

Second. If the transaction is set in motion by a single
impulse and operated upon by a single intermittent force
it forms a continuous act, and there can be but one prose-
cution therefor. Whar. Crim. L. (9th Ed.), Sec. 931; Dur-
ham v. People, 4 Scam. 173; Ochs v. People, 124 Ill. 421;
In re Snow, 120 U. S. 274; State v. Layton, 25 Iowa, 194;
Cawein v. Com., 61 S. W. Rep. 275.

SEARS, MEAGHER & WHITNEY and CLARENCE S. DARROW,
attorneys for plaintiffs in error Patrick H. O'Donnell and
James T. Brady; NATHANIEL C. SEARS, of counsel.

The trial court must not, by any remark or any com-
ment made in the hearing of the jury, indicate his opinion
as to whether a matter is, upon the evidence, credible or not,
unless such comment be in favor of the accused. A viola-
tion of the rule, even in a civil case, is treated as ground
for reversal if the evidence is so far conflicting upon the
merits, as to leave it doubtful if the jury might not have
been influenced by the comments of the court. This court
has enforced the rule in many cases, among which are
Swenson v. Erickson, 90 Ill. App. 359; Brinckerhoff v.
Briggs, 92 Ill. App. 538; Chicago City Ry. Co. v. Wall, 93
Ill. App. 412.

Improper and prejudicial statements, made by the assist-
ant state's attorney in his address to the jury, constitute
reversible error. Hennies v. Vogel, 87 Ill. 242; Earll v.
People, 99 Ill. 123; McDonald v. People, 126 Ill. 150; Raggio
v. People, 135 Ill. 533; Herkimer v. Shea, 21 Ill. App. 85;
State v. Fischer, 124 Mo. 460; State v. Bobbst, 131 Mo. 328;
State v. Baker, 57 Kan. 541.

Improper and prejudicial remarks, made by the trial
court in the presence and hearing of the jury, constitute
reversible error. Bill v. People, 14 Ill. 432; Fisher v. Peo-
ple, 23 Ill. 283; Kennedy v. People, 44 Ill. 283; Shirwin,
v. People, 69 Ill. 55; Lycan v. People, 107 Ill. 423; Burke
v. People, 148 Ill. 70; Feinberg v. People, 174 Ill. 609;

O'Donnell v. The People.

Synon v. People, 188 Ill. 625; Cunningham v. People, 195 Ill. 550.

PATRICK H. O'DONNELL, attorney for plaintiff in error John F. O'Donnell.

CHARLES S. DENEEN, state's attorney, for defendants in error; ALBERT C. BARNES, assistant state's attorney, of counsel.

Where the indictment charges the object of the conspiracy in such a way as to show it to be criminal, it is unnecessary to allege specifically the means by which such object was to be accomplished. 2 McClain Crim. L., Sec. 974.

The doing of any act tending to obstruct the due course of public justice was always indictable at common law. State v. Carpenter, 20 Vt. 12; State v. Keyes, 8 Vt. 57, 67; 1 Russ. on Cr., 265 (9th Ed.).

It is indictable to conspire to do an unlawful act by any means. Smith v. People, 25 Ill. 17.

The conspiracy is completed when the combination is formed, and the impossibility of carrying out the object of it will not prevent punishment of the conspiracy itself. 2 McClain Cr. Law, Sec. 967; Ochs v. People, 124 Ill. 399.

It is no justification of a conspiracy to do an unlawful act injurious to public justice, that the court had no jurisdiction of the cause in which the unlawful design was sought to be effected. Hawkins' Pleas of the Crown, Vol. 1, p. 447, Sec. 3 (Curwood's Ed.); State v. Carpenter, 20 Vt. 12.

Where a matter is capable of two different meanings, that will be taken by the court which will support and not defeat the proceedings. 1 Bish. N. Crim. Pro., Secs. 356, 510, 511.

Proof of conviction to affect credibility is not affected by pardon. Curtis v. Cochran, 50 N. H. 244; Bennett v. State, 24 Tex. App. 79.

A conspiracy may be proved by circumstantial evidence, namely, by proof of facts from which the jury may fairly

imply it. 2 McClain, Sec. 989; 2 Bish. N. Crim. Pro., Sec. 227; 2 Arch. Crim. Pr. & Pl., 1841 (8th Ed.); 3 Greenleaf on Ev., Sec. 93; Ochs v. People, 124 Ill. 423; Spies v. People, 122 Ill. 1; Storms case, 1 City Hall Rec. 169.

Each conspirator is liable for the acts of others in carrying out the general design, even though such specific acts were not agreed upon, if within the general scope of the common plan. Spies v. People, 122 Ill. 1; Lamb v. People, 96 Ill. 73; Hamilton v. People, 113 Ill. 34; 2 McClain Crim. L., Sec. 970.

If a party has been deceived by the conduct of his witness, he may interrogate him as to his previous statements, to refresh his recollection if a forgetful witness, or to probe his conscience and move him to relent and speak the truth if a perverse one. Nat. Syrup Co. v. Carlson, 42 Ill. App. 178, 185; 1 Greenleaf on Ev., Sec. 444; Best on Ev., Sec. 645; 1 Thompson on Trials, Sec. 512; 1 Whart. Ev., Sec. 549; Bullard v. Pearsall, 53 N. Y. 230; Bennett v. State, 24 Tex. App. 78.

There should be no reversal for improper remarks of the state's attorney except for a palpable abuse of discretion in this respect manifestly tending to an improper conviction. Bulliner v. People, 95 Ill. 394.

Remarks by the state's attorney, even though improper, and censurable, are not ground for reversal where the verdict is justified by the evidence. Duffin v. People, 107 Ill. 113; Bonardo v. People, 182 Ill. 411; Wilson v. People, 94 Ill. 327; Siebert v. People, 143 Ill. 590, 591; Schroeder v. People, 196 Ill. 211.

The court of review will always hesitate to set aside a conviction on account of remarks of the state's attorney, unless it appears that the jury were carried away by passion or prejudice in the rendition of the verdict. Raggio v. People, 135 Ill. 533; Bonardo case, *supra*, p. 420.

Illustrations drawn from well-known historical facts are not out of place when used merely for the purpose of explaining or emphasizing the bearing of the evidence. Sanders v. People, 124 Ill. 225.

An erroneous statement of evidence as counsel understands it, if not in the spirit of unfairness and fraud, will be no ground for awarding a new trial.   Thomp. on Trials, Vol. 1, Sec. 978; State v. Mallon, 75 Mo. 355; People v. Barnhart, 59 Cal. 402.

A verdict will not be set aside for improper remarks made by the trial court not prejudicing defendant's case.   Burns v. People, 45 Ill. App. 72;   Beasley v. People, 89 Ill. 572, 580; Burke v. People, 148 Ill. 75; Featherstone v. People, 194 Ill. 338.

Mr. Justice WINDES delivered the opinion of the court.

### INDICTMENT.

It is claimed that the motions to quash the indictment should have been sustained for several reasons.   For the plaintiffs in error, the two O'Donnells and Brady, it is said that each count of the indictment is bad because it fails to allege that George H. Woods, justice of the peace of the town of North Chicago, held the court specified in the indictment in that town.   Counsel for Gallagher make the same claim, and in addition the further claims that each of the counts is bad because, first, the allegations thereof are vague and indefinite; second, that it does not appear in any of the counts that any of the persons named as parties to the conspiracy charged was a constable or other officer having power to summon or cause to be summoned the jurors named; and, third, that it is not alleged in either of the counts that Woods, the justice of the peace, had jurisdiction to try the cause mentioned in each count of the indictment.   The first count is claimed by counsel for Gallagher to be bad because it fails to aver that the suit or proceeding mentioned therein was pending or about to be commenced at the time the conspiracy charged was first entered into.

The indictment in each of the counts in substance charges plaintiffs in error with conspiracy to do an illegal act, and is based upon paragraph 96 of section 46 of the Criminal Code, which, so far as material, is as follows:

" If any two or more persons conspire or agree together * * * to do an illegal act injurious to the public trade, health, morals, police or administration of public justice * * * they shall be deemed guilty of conspiracy," etc.

It is well settled by decisions of this and the Supreme Court construing Section 408, Div. 11, of the Criminal Code (Hurd's Stat. 1901), which provides in effect that an indictment shall be sufficient which states the offense in the terms and language of the statute creating the offense, or so plainly that the nature of the offense may be easily understood by the jury; that it is not sufficient to follow the language of the statute creating an offense, if its words do not describe the act or acts constituting such offense, but that the indictment in such case must be sufficiently certain and particular in its allegations as to the act or acts with which the defendant is charged, that he may have reasonable notice thereby of the precise offense charged against him. McNair v. The People, 89 Ill. 441; Johnson v. The People, 113 Ill. 99; Cochran v. The People, 175 Ill. 28; West v. The People, 137 Ill. 189; Williams v. The People, 67 Ill. App. 344; Towne v. The People, 89 Ill. App. 258–78, and cases cited.

Therefore all the various contentions of the plaintiffs in error may be said, in a general way, to be included under the question as to whether the different counts of the indictment charge them with the commission of an illegal act injurious to the public morals or to the administration of public justice with sufficient certainty and particularity as to inform them of the nature of the charge sought to be proved against them. The act on which the indictment is based uses general terms—does not sufficiently specify the offense of conspiracy. An indictment which describes the offense in the language of this statute would not give a defendant notice of the elements of the particular offense which, under such an indictment, might be proved against him. Such indictment, to conform to the decisions cited, must specify the essentials of the agreement which it is claimed constitute the conspiracy.

O'Donnell v. The People.

The conspiracy which is attempted to be charged against plaintiffs in error is that they confederated or agreed together to accomplish an unlawful purpose.

The gist of the crime of a conspiracy of this kind is the agreement to do the illegal act, and not the means agreed to be used to carry out the unlawful agreement. The latter of itself is a separate and distinct offense from the former. 2 McClain's Criminal Law, Sec. 966; 6 Am. & Eng. Ency. of Law, 841, and cases cited; State v. Buchanan, 5 Har. & J. (Md.) 317; 2 Wharton's Criminal Law (2d Ed.), Secs. 1345, 1380 and 1382, and cases cited; United States v. Martin, 4 Clif. 156–62, and cases cited; Commonwealth v. McHale, 97 Pa. St. 397, 405; State v. Ripley, 31 Me. 386–9.

If, therefore, this indictment charges the plaintiffs in error with an agreement to do an illegal act in such specific terms that they are thereby informed of the nature of the offense, and so that it may be easily understood by the jury, then the indictment is sufficient. The word " illegal " used in the statute is synonymous with unlawful, and means contrary to any law, whether criminal or civil. 2 Bishop's Crim. Law, Secs. 171, 178; 6 Am. and Eng. Ency. Law (2d Ed.), 850; Webster's Dictionary.

A conspiracy to do anything opposed to the principles of right and justice, or which has for its object the perversion or obstruction of public justice, is a criminal offense and indictable under the common law. 6 Am. and Eng. Ency. Law, (2d Ed.), pp. 850, 855, 856, and cases cited; 2 Bishop's New Crim. Law, Secs. 220 and 221, Div. 1 and cases in note 8; 3 Russell on Crimes, (9 Am. Ed.), 120; 3 Chitty's Crim. Law, (4 Am. Ed.), pp. 1139, 1141; Commonwealth v. McKisson, 8 S. & R. (Pa.), 420; Wilson v. Com. 96 Pa. St. 56; Slomer v. People, 25 Ill. 70; Smith v. People, 25 Ill. 17–23; Cole v. People, 84 Ill. 216; State v. Ripley, 31 Me. 386–9.

The Illinois cases cited support the general doctrine of the text writers as above quoted. In the Smith case, *supra*, a judgment of conviction upon an indictment for a conspiracy to seduce a female child of sixteen years was

affirmed, and the court held that seduction was not, under our law, indictable and punishable as a crime, but that a conspiracy to accomplish that purpose was unlawful and violative of the rights of individuals, and as such punishable at common law. The court, in speaking on this point, say :

"If there be any act which should be regarded as unlawful in a sense of the law of conspiracy, but which is not punishable as a crime, it is this very act, and so it has been and ever should be regarded by the courts."

In the same report, in the Slomer case, which was not, however, conspiracy, the court said that it was a grave offense for a constable to "combine with others to procure criminal process for purposes of oppression, fraud, or private ends."

In the Cole case, *supra*, the court affirmed a judgment under an indictment which charged a conspiracy against the defendants, viz: that they "unlawfully, feloniously, willfully and fraudulently did conspire and agree together, with the fraudulent intent, wrongfully and wickedly to injure the administration of public justice, by then and there unlawfully, willfully and fraudulently attempting to obtain and procure a decree of divorce in the Superior Court of Cook County, "and held that the indictment stated the offense so plainly that the nature of the offense could be easily understood.

The Smith case has been frequently cited by the Supreme Court with approval.

In the McKisson case, *supra*, the Supreme Court of Pennsylvania held good an indictment which charged a conspiracy to cheat and defraud one Shoemacher of a heifer of the value of $12, and that the confederating was the gist of the offense, referring to numerous common law authorities.

In the Wilson case, *supra*, the court affirmed a judgment of conviction which charged a conspiracy to enter upon certain premises and hold and keep possession of the same, and held that the offense was complete when they conspired to commit the act, and that the indictment charged a common law offense.

O'Donnell v. The People.

In the Ripley case, *supra*, in which a conspiracy to commit a statutory offense was charged, viz., to assault one Baker, a justice of the peace, in order to prevent him from performing the duties of his office, the court say :

" In an indictment for conspiracy at common law, if the conspiracy charged is an unlawful combination and agreement of two or more persons to commit a deed which if. done would be an offense, well known and acknowledged, the nature of which is perfectly understood by the name by which it is designated, no further description of the crime is required."

Tested by the foregoing authorities we are of opinion that each count of the indictment charges the plaintiffs in error with a conspiracy to do an unlawful act, and that the charge is sufficiently definite and specific to apprise them of the nature of the offense charged, and so that it may be easily understood by the jury.

If, however, we are wrong in this view, still we think that the first count is good under the statute of this state— Sec. 33, parag. 67 of the Criminal Code, which provides :

" Whoever corrupts, or attempts, directly or indirectly, to corrupt any  *  *  *  juror  *  *·  *  by giving, offering or promising any gift or gratuity whatever, with intent to bias the opinion or influence the decision of such  *  *  *  juror  *  *  *  in relation to any matter pending in the court  *  *  *  shall be imprisoned in the penitentiary," etc.

Under this statute it seems clear that the first count of the indictment charges a conspiracy to commit an unlawful act, which the statute makes criminal and punishable in the penitentiary. All the authorities agree, in substance, that a conspiracy to commit a statutory offense is indictable, and the only question as to this count then is, whether its allegations are sufficiently specific to show an agreement to commit a crime under the statute, and the nature of it, so as to enable the defendants and the jury to understand it. The first count in substance shows that on the 14th day of April, 1902, at a court of a justice of the peace in Chicago, presided over by a justice of the peace in and

for the town of North Chicago, a certain cause, naming it, was tried by a jury, and that before the trial on said day, the plaintiffs in error unlawfully, etc., conspired and agreed with one Jones and others, naming them, by promised rewards, etc., unlawfully to procure a verdict for the defendant in that cause, and to bring about the same, to cause and enable Lawrence and others, naming them, to be sworn, and to serve as jurors in the trial of said cause, and to give and procure to be rendered a verdict for the defendant therein, and then proceeds to set out the means in pursuance of the agreement by which the conspiracy was consummated. The count not only charges a crime under this section of the statute referred to, but we think it gives sufficient specifications of the crime so that it could be easily and readily understood, not only by the plaintiffs in error, but by the jury. It is unnecessary to, and we do not decide as to the sufficiency of the other counts under this statute, inasmuch as the verdict is general as to each of the plaintiffs in error, and one good count is sufficient, in the absence of reversible error in other respects, to sustain the judgment.

In view of the foregoing authorities and the conclusions stated, it seems sufficient to say, with reference to the specific claim that the indictment is bad because it nowhere alleges that Woods, the justice of the peace, held the court specified in the indictment in the town of North Chicago, that it clearly appears from the indictment that the occurrence took place at a court of a justice of the peace in the city of Chicago which was held and presided over by Woods, a justice of the peace in and for the town of North Chicago. It could not be a court of a justice of the peace held and presided over by said Woods, a justice for the town of North Chicago, unless the court was held in that town. As we have seen, the gravamen or gist of the offense is the unlawful act, viz., in this case, the agreement by promised rewards, etc., unlawfully to procure a verdict for the defendant in a certain cause described, which was tried by a jury at a court of a justice of the peace. It is

sufficient that it was a court of public justice, and that it clearly appears from the indictment that the agreement was in effect to defeat justice in a public court. The two cases relied upon in this connection, viz., Van Dusen v. The People, 78 Ill. 645, and Gunning v. The People, 189 Ill. 165, are not analogous to the case at bar. In the first case the crime charged was perjury, and in the next it was for corruptly proposing to receive a bribe by a town assessor to influence his official action as such. Both cases in effect hold that an assessor could perform no official act outside of or beyond the limits of his town, and the act in question in each case was an essential element of the crime charged in the indictment.

What has been said generally with regard to the sufficiency of the indictment seems to us a sufficient answer as to the first and second claims of the counsel of Gallagher, viz., that the allegations of each count are vague and indefinite, and that no one of the conspirators named was a constable or other officer having power to summon jurors, and the further claim that the first count is bad because it fails to allege that the suit mentioned therein was pending or about to be commenced.

Much stress is laid in the argument of counsel for Gallagher upon their third point, viz., that it is nowhere alleged in the indictment that Woods, the justice of the peace, had jurisdiction of the cause in the justice court mentioned in the indictment, which is claimed to be fatal. We are of opinion that this claim is not tenable, for the reason that the jurisdiction of the justice of the peace was not an essential element of the conspiracy charged, the gist of which was the attempt to corrupt the administration of justice.

In 1st Hawkins' Pleas of the Crown, page 447, Sec. 3, the author says:

"Neither doth it seem to be any justification for a conspiracy to carry on a false and malicious prosecution * * * that the court wherein the prosecution was carried on, or designed to be carried on, had no jurisdiction of the cause, or that the matter of the indictment did import no

matter of scandal, so that the party grieved was in truth in
no danger of losing either his life, liberty, or reputation.
For notwithstanding the injury intended to the party
against whom such a confederacy is formed may perhaps
be inconsiderable, yet the association to pervert the law in
order to procure it, seems to be a crime of a very high
nature, and justly to deserve the resentment of the law."

This language is quoted with approval by the following
text writers, viz.: 2 Bishop's New. Crim. Law, Sec. 221; 3
Chitty's Crim. Law (4th Am. Ed.), p. 1141; 3 Russell on.
Crimes (9th Am. Ed.), 120. See also, State v. Ripley, 31
Me. 391. It is also in harmony with the general princi-
ple announced by all the text writers and in many well-
considered cases of conspiracy, that when the conspiracy
charged is to commit an unlawful act, the offense is com-
plete when the corrupt agreement is made, and in no way
depends upon any overt act done or means used or agreed
to be used to consummate the unlawful agreement. The
acts and means used are merely evidence of the conspiracy.
In this case, while it was necessary to specify a court and a
case before that court, the trial of which was to be effected
by things agreed to be done and means agreed to be used
pursuant to the conspiracy, in order to notify the plaintiffs
in error of the nature of the offense with which they were
charged, so as to enable them to make their defense, we are
at a loss to perceive why the indictment should aver juris-
diction of the case before the justice, or any facts from
which jurisdiction should conclusively appear. What dif-
ference it would make with the crime charged against
plaintiffs in error whether the court whose proceedings it
is alleged they attempted to corrupt had or had not juris-
diction, we can not conceive. The corrupt agreement makes
the crime charged, and whether or not it succeeds or can
succeed is a matter of slight importance. It might be,
because of a lack of jurisdiction in the justice court, the
conspiracy could not be successful, but that does not affect
the crime in the least. 2 McClain's Crim. Law, Sec. 967;
6 Am. & Eng. Enc. of Law (2d Ed.), p. 844; Com. v. Judd,
2 Mass. 329; 3 Chitty's Crim. Law (4th Am. Ed.), 1141;
Ochs v. The People, 124 Ill. 391, 423.

O'Donnell v. The People.

It is well settled in this state that the jurisdiction of a justice court can not be determined until the evidence has been heard. It would be strange indeed that the crime here charged could not be said to be complete until the case was heard by the justice, in order to determine the question of his jurisdiction. The agreement alleged to have been made was such that it would tend to pervert, obstruct and render nugatory any hearing of the case whether there was or was not jurisdiction.

Numerous cases are cited and relied upon by counsel as sustaining their contention in this regard, all of which we have carefully considered, but to review them seems unnecessary. They are mainly to the effect that where a crime is charged, an essential element of which depends upon the jurisdiction of a court, such jurisdiction must appear by facts alleged and proven. These cases would no doubt be controlling in this case if the crime here charged depended upon the jurisdiction of the court. The case of Armstrong v. Van de Vanter, 21 Wash. 682–95, seems most nearly in point of any case relied upon. We do not think it controlling for the reason that the court states in substance that there was no averment of fact in the indictment, which was conspiracy, to which the defendant could turn to aid him in preparing his defense, and it also affirmatively appeared in the case that the justice of the peace before whom the case involving the conspiracy charged was tried, had no jurisdiction. We are of opinion, also, that the holding of the court is not sanctioned either by reason or the weight of authority.

### BILL OF PARTICULARS.

What has been said as to the indictment sufficiently disposes of the claim of plaintiffs in error that the court erred in overruling their motion for a bill of particulars.

### RULINGS ON EVIDENCE.

Numerous claims are made by counsel that the court made erroneous rulings upon the admission and exclusion of evidence and in permitting the state's attorney to ask ques-

tions prejudicial to plaintiffs in error of certain witnesses on cross-examination. We will make special reference to only a few of such rulings, which show their general nature and tendency.

Thomas Ashworth, a witness for the state, who knew the O'Donnells, Brady, Simon and Gallagher, was called to testify to a conversation at the law office of O'Donnell & Brady in the Temple Building, Chicago, claimed to have been had on the 14th day of April, 1902, between Brady, Gallagher and Simon, which tended strongly to support the charge of conspiracy. The date was very important, and the witness said, in answer to the questions of the assistant state's attorney, that he could not "place the date—was not certain," whereupon he was asked by the assistant state's attorney if he had not made a statement to the state's attorney, and answered that he had, and that it had been read to him. Although this line of examination was objected to, upon the statement of the assistant state's attorney that "he was an unwilling witness," the court permitted the assistant state's attorney, against the objection and exception of plaintiffs in error, after asking the witness whether he had been questioned on the matter by the state's attorney, and exhibiting to the court, in the presence of the jury, a paper, presumably the alleged statement of the witness, to ask the witness numerous questions, the purport of which was that the witness had made statements to the state's attorney contradictory to his evidence upon the stand. One of the questions so asked the witness is as follows:

Q. "Now, I will have to repeat it again—will you read it from the record—I can state it shorter. Did you, on the occasion of Mr. Deneen's interview with you, which was on May 27th, the first time you saw him, answer as follows to the following questions put by him: 'Directing your attention directly, when was it that you met Simon in the office there with Gallagher and Brady?' Did you say, 'Do you mean on this particular day?' Question: 'Yes, that is with reference to the jury bribing?' Answer: 'It was on Saturday.' 'About what time in the morning?' 'It was about ten o'clock.' 'And that was the Saturday

O'Donnell v. The People.

preceding the sitting of the jury on the case?' 'Yes, sir.' Do you remember making those statements?" To which he replied, "I do not remember answering them as positive as that."

A similar course of examination was permitted as to the witnesses Lewis and Jahn, called by the state, the details of which need not be stated.

A witness, Crowe, the proprietor of the Revere House in Chicago, called for plaintiffs in error, testified that he knew plaintiff in error Lawrence, and had a conversation with him at the Revere House in the first week of April, 1902, and identified an order for an advertisement which had been testified to by said Lawrence and admitted in evidence. The state offered evidence tending to show, among other things, that Lawrence was present at the Revere House on the morning of April 14, 1902, with Gallagher and others of the alleged conspirators, by appointment, engaged in conversation with one or more of them, and did certain things, all tending strongly to establish the conspiracy charged. Lawrence's testimony contradicted much of this evidence, and while he admits that he was there summoned as a juror in the Traction Company case and served as such, he denies all knowledge of any conspiracy and explains his presence at the Revere House at that time because he had an appointment with Mr. Crowe with reference to the said advertisement, which he produced. Counsel for plaintiffs in error offered to prove by Crowe that he did have a conversation in the first week in April with Lawrence, in which the latter asked for a renewal of the order for that advertisement; that witness told Lawrence that he, Crowe, was then negotiating for the sale of the hotel, and would not order it, but that he told Lawrence to call again, and that the offer was made for the purpose of explaining Lawrence's presence at the hotel on the morning of April 14th. The court, upon objection, excluded the offered evidence and remarked: "That would not explain it." An exception was preserved to the ruling, as well as the court's remark.

On cross-examination of the witness Madden, who was called to testify to the good reputation of the plaintiffs in error P. H. O'Donnell and Brady, the assistant state's attorney was permitted, against objection, to exhibit to the witness what purported to be a photograph of a blank sheet of foolscap paper, having the name of Walter C. Jones, a leading witness for the state, an inch or two from the bottom, and to ask the witness numerous questions with reference thereto, both before and after exhibiting the photograph to the witness, the evident intention of the questions being to make the impression upon the jury that the witness had, in the interest of plaintiffs in error O'Donnell and Brady, attempted to tamper with the state's witness Jones. A part of the examination, it was stated by the assistant state's attorney, was for the purpose of showing the witness' interest and a part for his impeachment. Its length forbids a detailed statement of it. A few of the questions, which tend to show their nature, are as follows:

"Mr. Barnes: Didn't you and the other parties go out to Gross Park a few Sundays before this case came on for trial—three Sundays ago, three or four, for the express purpose of meeting Jones there, if another party could get him there?

The Witness (answering): I did not.

Q. Didn't you there show a man a thousand dollars and say that he could have it if he would get Jones there and get him to sign a certain paper?

Q. Did not such paper come into your hands, and did you not talk about it, and talk about leaving spaces for you to acknowledge the signature as a notary public?"

The second question was not answered, the court ruling after an objection, viz., "Perhaps the question ought to be broader." The third question was not answered, because the court ruled it was not sufficiently specific for purposes of impeachment. When the question was made more specific the court required it to be answered. The witness denied all the insinuations and indirect charges made by the numerous questions, and no attempt was made by the state in its evidence to impeach the witness nor to show that he

O'Donnell v. The People.

had any knowledge whatever of any effort to tamper with the witness Jones.

A similar course of examination was indulged in by the assistant state's attorney upon the cross-examination of the defendants' witness Werner, and the defendant Gallagher. Among other things, the witness Werner was asked, referring to a conversation between the witness and Thomas Ashworth, a state's witness, above mentioned, the following question, to which he made the answer following, to wit:

"Q.   Didn't you say there that you—didn't you say there that you would perjure yourself to save Brady, and you did not see why he would not, or words to that effect? A. No, sir; I never said that, and you know I did not."

And again, referring to a conversation with Mrs. Ashworth, the wife of the said Thomas Ashworth, the following question was asked and answer made, to wit:

"Q.   And didn't you there say to her that somebody had to do the dirty work for O'Donnell & Brady's office, and if you did not do it somebody else would have to do it? A.   No, sir, there never was anything of that kind that was said, Mr. Barnes; not a word of it, or anything that ever equaled it or came near it.   On the contrary, Mrs. Ashworth invited me for Sunday dinner—the Sunday following."

No objection was made to either of the foregoing questions, and it having been elicited that witness had been employed by O'Donnell & Brady, among other things, to get affidavits and statements of witnesses, the assistant state's attorney asked the witness the following question, which was answered by the witness before an objection could be interposed, viz:

"Q.   And, sir, isn't it a fact that you were asked to procure false affidavits, and didn't you do so?

Mr. Quinn:   Wait a minute.

The witness (answering):   I was never asked to do anything of the kind."

As soon as an objection was interposed, the court ruled that the question was improper.   The question and answer

referred to a case of People v. Graff, 108 Ill. App. 168, in which O'Donnell & Brady were attorneys. After the court's ruling, as above stated, counsel for plaintiffs in error excepted generally to the language and questions of the assistant state's attorney.

Against objection the assistant state's attorney, among other things, asked Gallagher this question: "You came here, did you not, because of your ability to manipulate ballots?" To which the witness answered "Not at all." There is no evidence whatever to support any of the insinuations contained in the questions to these witnesses.

The evidence on behalf of the state in substance tended to show that the plaintiffs in error Simon and Brady, with Gallagher, were principal actors in arranging and carrying out the conspiracy charged. Brady testified that he had a talk with Simon in the court room of the justice court with regard to the acceptance on the jury of one of the alleged corrupted jurymen, Michaels, and when asked what this conversation was, objection being interposed by the assistant state's attorney, the court would not permit the witness to answer, whereupon counsel offered to prove by the witness, in answer to the question, that Simon objected to Brady keeping Michaels on the jury, and offered to let him go, but the court would not allow the evidence. The witness, however, later testified that he took Michaels on the jury on his own responsibility, and Simon testified that he was asked to give his opinion as to the different jurors, and gave his opinion as to Michaels, not stating what it was.

It appeared in the progress of the trial that plaintiff in error Gallagher had been convicted of the offense of forgery, was sentenced to the penitentiary for one year and served seven months of that time. His counsel offered to show that he had been pardoned, but, upon objection of the assistant state's attorney, the court ruled out such proof.

All the different rulings of the court to which we have referred are, in our opinion, erroneous. The evidence of

O'Donnell v. The People.

Ashworth as to what he testified occurred, if it was on the 12th day of April as claimed by the state, which was prior to the consummation of the alleged conspiracy, which was at the end of the trial in the justice court, and not after that trial, was very important evidence in support of the state's case.    The witness did not fix the date and said that he could not, and did not, after the most searching examination by the state's attorney.    The questions asked by the state were calculated to impress the jury that the witness was not testifying truthfully as to the date, and that he, when questioned by the state's attorney, had made a different statement and fixed the date in question on Saturday before the trial in the justice court.    There is no evidence in the record, beyond the insinuations contained in the state's attorney's questions, that the witness made any different statement to the state's attorney than what he did upon the stand, nor that he was an unwilling witness.    Gale v. The People, 26 Mich. 161; People v. Mullings, 83 Calif. 138–45; State v. Irwin, 60 L. R. A. (Idaho), 716, and cases cited; People v. Ray, 55 N. Y. Supp. 410–17 (1899).

In the cases cited a similar course of examination was held to be erroneous.    The case specially relied on to support the court's ruling, viz., National S. Co. v. Carlson, 42 Ill. App. 178, does not sustain such a course of examination as was here permitted.    It applies only to refractory or unwilling witnesses, and where the party has been deceived by the conduct of his witness, which does not appear in this case.    In Coal Co. v. Seniger, 179 Ill. 370, a somewhat similar course of examination was held not to be error, but in that case counsel stated that he was surprised at the testimony of the witness before the examination was permitted, and the holding of the court is based upon the facts that " the witness developed a refractory disposition," and that his conduct and manner justified the court in permitting the examination.

The rulings of the court as to the examination by the assistant state's attorney of the witnesses Jahn and Lewis,

called for the state, were for the same reason erroneous.
Nothing in the record shows that either of them was
refractory or unwilling, or that the assistant state's attor-
ney was surprised by their evidence.

The evidence of Crowe was, we think, erroneously ex-
cluded, because it tended to corroborate that of the plaint-
iff in error Lawrence as to the reason for his presence at
the Revere House on April 14th when he was summoned
as a juror in the Traction case, and to contradict the evi-
dence on behalf of the state, to the effect, in substance, that
he came there by appointment with one and with the
knowledge of one or more of the alleged conspirators.
Lawrence's evidence was important to the plaintiffs in error
Gallagher and John O'Donnell, and had a general bearing
favorable to P. H. O'Donnell and Brady. People v. Mana-
han, 15 N. Y. Crim. L. Rept. 431–40; 61 App. Div. 75; 70
N. Y. Supp. 108, and cases cited; Robinson v. State, 53
Md. 151–3.

For the same and other reasons, that it was error to
allow the examination of the witness Ashworth, to which
reference has been made, the court's rulings with reference
to the cross-examination of the witnesses Madden, Werner
and Gallagher were also erroneous, the only difference being
that the latter witnesses were called for the defense, while
Ashworth was a state's witness. The error in these rulings
consists in the insinuations contained in the questions, as
to the witness Madden that he had attempted to tamper
with the state's leading witness, Jones, in some way, and
offered $1,000 to bring it about; as to the witness Werner,
that he had procured false affidavits, was willing to do the
dirty work of O'Donnell & Brady, and to perjure himself
as well as procure Ashworth to commit perjury to save the
plaintiff in error Brady; and as to Gallagher, that he came to
Chicago because of his ability to manipulate ballots, a rea-
sonable construction of which would be that he was an expert
in election frauds. The claim of the state that this course
of examination was proper to show the interest of the wit-
nesses Madden and Werner, and that there was nothing

specially prejudicial in the questions, is not, in our opinion, tenable. It sufficiently appeared that both Madden and Werner were friendly to Brady and O'Donnell, and Gallagher was a defendant. What excuse there could be to impliedly charge these persons with such serious crimes as may be inferred from the questions, we are at a loss to perceive. The language of the learned Judge Cooley in the Gale case, *supra*, is quite pertinent in its application to this course of examination, viz:

" A list of questions which assume the existence of damaging facts may be put, in such manner and with such persistency and show of proof, as to impress the jury that there must be something wrong, even though the prisoner fully denies it and there is no other evidence."

The prejudice in the minds of the jury calculated to be aroused against plaintiffs in error, and especially as to Gallagher, O'Donnell and Brady, was, to say the least, serious. Especially is this true in view of the fact that nothing appears in the record to substantiate in the least the implied charges contained in the questions. We also think there was error in the ruling of the court in refusing to allow proof of the pardon of Gallagher. It is true the statute permits evidence of a conviction of a felony as bearing upon the credibility of a witness, but we regard it as both material and important, when such fact has been shown, that the jury should also know, as affecting his credibility, that he had been pardoned. Common fairness to the witness, as well as to the parties in whose behalf he appears, would permit proof of the pardon when asked.

The ruling of the court in excluding the evidence of plaintiff in error Brady, to which we have referred, was error, as we think, for the reason that it tended strongly to contradict the state's case. If, as claimed by the state, and as its evidence tends to show, both Brady and Simon were active participants in the conspiracy charged, and both knew that Michaels was a fixed juror in the Traction case, plaintiffs in error were entitled to have the jury know, if it was a fact, that Simon objected to Michaels being upon the jury. This matter, if true, was one of the

things that occurred in procuring the alleged corrupted jury —was connected with certain alleged acts done pursuant to the conspiracy, and admissible as part of the *res gestœ*.

### REMARKS OF THE COURT.

During the progress of the trial remarks were made by the trial judge which it is claimed were prejudicial to plaintiffs in error. Reference has been made to one such remark, viz., the statement of the court about the evidence of the witness Crowe, which was offered, as counsel stated, for the purpose of explaining plaintiff in error Lawrence's presence at the Revere House, where it was claimed he came by appointment with Gallagher, viz., "That would not explain it." We think the remark was erroneous, for the reason that it was an expression of opinion by the court from which the jury might well have inferred that the testimony of Lawrence as to why he came to the Revere House at that time was unworthy of credit—that his presence there was in no way explained by the purpose for which he testified he came.

In the closing argument of the assistant state's attorney he stated, in substance, that the state had more evidence in the case at bar of a conspiracy and of bribery than had been " produced in any other case of that character in my recollection and experience." Upon objection being made and being cautioned by the court, he said that the evidence " overwhelms everything else in public knowledge," and upon further objection being made, he said, " I will modify it by saying in the experience of mankind." To the last remark an objection was interposed, and the court said: " He has a right to make reference to what is a matter of public notoriety. Go on." No exception was taken after the court's ruling or to the language immediately following the ruling, but counsel stated before the ruling that he desired to except to the statement of the assistant state's attorney that the evidence overwhelmed everything else in public knowledge, and as modified, " in the experience of mankind." The court allowed an ex-

O'Donnell v. The People.

ception to the first statement of the prosecutor above quoted. Inasmuch as no exception was preserved to the language of the court used in its ruling, it can not be made the basis of a reversal. We, however, think that the remarks of the assistant state's attorney were improper and should not have been permitted by the court. His language was the expression of his personal opinion as to the weight of the evidence in the case as compared with all other cases, and was given especial prominence by the implied sanction of the court in its rulings, but is not ground for reversal, notwithstanding we think it was clearly prejudicial to plaintiffs in error, because no exception was taken to the court's ruling.

### REMARKS OF THE STATE'S COUNSEL.

Many remarks of the state's attorney, it is claimed, were prejudicial to the plaintiffs in error, one of which was the statement to which reference has been made, that the witness Thomas Ashworth was "an unwilling witness." This remark would be of slight importance, in our opinion, were it not for the fact that the examination of the witness which followed, and to which we have referred, was calculated to impress the jury strongly that he was an unwilling witness, and to cause the jury to give undue weight to his evidence bearing upon the conspiracy charge, which was of no importance, if the jury believed the testimony of several of the defendant's witnesses to the effect that the date, of which he was uncertain, was at a time after the trial of the Traction case. As we have seen, it was enough for counsel to have stated that he was surprised by the evidence of the witness, when a reasonable examination to test his memory would have been permissible.

In the assistant state's attorney's address to the jury he spoke of Brady and P. H. O'Donnell as the "prime arch conspirators in this case" of Gallagher as "the notorious ' Bill ' Gallagher," as an " infamous man, an ex-convict who had worn the striped livery of the state," and of P. H. O'Donnell he said, among other things:

"You thought you might take the short cut to fame and success, and grasping on the ladder of fame the rotten rung of corruption, you have fallen to the ground in disgrace and dishonor. Your day has passed; your sun has set; you have betrayed the community; you have been unfaithful to your mother. She bred you and helped educate you, and you have been untrue to the race from which you have inherited some of the noblest instincts. You have been untrue to the religion that nurtured you to better ideas, and you have disgraced the name of your profession and American citizenship. You are a criminal. You are gone. You should suffer with the others in this case the penalty that the law calls for, because you have committed one of the most atrocious crimes against humanity."

The state's attorney himself, in his argument to the jury, in referring to the testimony of plaintiff in error Simon, said :

"If we had been able to pry open the mouth of Cyrus Simon wide enough to reveal the facts, I think" other persons, attorneys of the Traction company, naming them, "would have been on trial here."

In the argument of the assistant state's attorney to the jury, in speaking of O'Donnell and Brady and the persons in their office, he said :

"They knew Gallagher was guilty. They knew Gallagher had got to go to the penitentiary, and they thought they would frame up a story through Gallagher that would save the other men that had participated with him in this crime."

And in another connection, referring to O'Donnell and Brady, he said :

"I do not wonder that they deemed it necessary to bear the expense of the rest of the men that they have got into this conspiracy, to hire seven lawyers, if necessary, and to pay Mr. Gallagher's expenses while he is in the penitentiary."

To all the foregoing remarks of counsel for the state, except the one in which Gallagher was called a criminal, and where it was stated that they, referring to O'Donnell and Brady, knew that Gallagher was guilty, and the sentence following this statement, objections were made,

O'Donnell v. The People.

which were overruled and exceptions preserved. As to the remarks to which no objection was made, and which we think were improper, plaintiffs in error can not complain, but as to the others we are of opinion they were improper and calculated to bias and prejudice the minds of the jurors against all the plaintiffs in error, and especially against P. H. O'Donnell, Brady and Gallagher. The remarks as to Gallagher, while not without support in the evidence, were inflammatory in their nature, and would naturally arouse the passions of the ordinary juror so that he would not give that calm, considerate and impartial consideration of the evidence in the case which should be done in every criminal trial and which is absolutely necessary to insure in the minds of every good citizen that respect and confidence in the administration of the law which is necessary to the preservation of liberty and free institutions.

The references to P. H. O'Donnell, in which he is charged with unfaithfulness to his mother, of being untrue to his religion, with having disgraced his profession and citizenship, calling him a criminal and charging him with having committed one of the most atrocious crimes against humanity, were, in our opinion, clearly improper, were in no sense argument, and only calculated to bias and prejudice the jury against him. If they had that effect as against him, it is not unreasonable that such bias and prejudice should have affected the verdict as to the other plaintiffs in error. It certainly should not, as was the case in some instances, have been impliedly sanctioned by the court overruling the objections or failing to rule thereon, when objection was made to the remarks.

The language of the state's attorney as to plaintiff in error Simon was in effect that he had committed perjury, and if he had told the truth certain attorneys of the Traction Company, referring to them by name, would have been on trial. Simon's evidence was very important to the plaintiffs in error, and its consideration by the jury calmly and deliberately was their right, without any insinuations such as this was, which would tend to arouse the passions and prejudices of the jurors against the Traction Company

and its attorneys named, by reason of the contest then in progress between it and the city of Chicago, which would naturally be turned to plaintiffs in error.

The statement above quoted, that O'Donnell and Brady had deemed it necessary to bear the expense of the other alleged conspirators, to hire seven lawyers and pay Gallagher's expenses while in the penitentiary, is wholly without direct, or even any reasonable indirect, support in the evidence, was therefore without justification, and calculated to prejudice plaintiffs in error, and especially O'Donnell and Brady.

In other jurisdictions as well as our own, courts of review have criticised severely language of the public prosecutor in criminal trials similar to that used in this case, and held the same to be ground of reversal. We cite a few of such cases in addition to the ones already referred to, viz.: People v. Mitchell, 62 Calif. 411; State v. Jackson, 95 Mo. 623–52; State v. Fischer, 124 Mo. 460–4; State v. Baker, 57 Kas. 541–5; People v. Kahler, 93 Mich. 625–8; People v. Ah Len, 92 Calif. 282; Parks v. State, 35 Tex. Crim. Rep. 378–82; Thompson v. State, 43 Tex. 274; Coble v. Coble, 79 N. C. 589; Earll v. People, 99 Ill. 123–36; Bonardo v. People, 182 Ill. 420; Raggio v. People, 135 Ill. 533–45; Schroeder v. People, 196 Ill. 214.

The cases cited outside of Illinois are all pertinent, but a special reference to a part only of them will be made. In the Fischer case, where counsel, in his argument, stated to the jury that the defendant " was a low and contemptible brute, unworthy the respect of the community," the Supreme Court of Missouri characterized the language as mere personal abuse, having nothing to do with the case, and only calculated to inflame the passions of the jury against the defendant.

In the Baker case, *supra*, the Supreme Court of Kansas condemned, as mere personal abuse and calculated to prejudice the defendant, the language of the prosecutor in his argument, in which he called the defendant " a sharper, a villain and a knave," and for that, with other errors, the

O'Donnell v. The People.

case was reversed, the court saying that the non-interference of the trial judge may have led the jury to think the prosecutor's language was indorsed, "and thus enhanced the prejudice."

In the Ah Len case, *supra*, the Supreme Court of California, in passing upon remarks of the prosecutor not justified by the evidence, among other things, say: "It is true that the attorney for the prosecution in this case was not permitted by the court to comment at any length upon the facts which he himself imported into the case, but while this was to the credit of the court, it does not change the fact that a matter not in evidence, and of a nature clearly prejudicial to the appellants, was laid before the jury for the purpose of affecting their verdict, and it is no answer to this to say that the jury may have disregarded it;" and that unless it was clear that the verdict was not affected by the misconduct of counsel a new trial should be granted.

In the Coble case, *supra*, the Supreme Court of North Carolina, in speaking of the language of the prosecuting attorney, no more violent than that here used with reference to P. H. O'Donnell and Gallagher, said: "The language and meaning of counsel were to humiliate and discredit defendant in the eyes of the jury and bystanders. * * * Such an assault is no part of the privilege of counsel, and was well calculated to influence the verdict of the jury," and by reason thereof awarded a new trial.

In the Earll case, *supra*, where the defendant was charged with murder in attempting to produce an abortion, the prosecutor referred to him in his argument as a "red-handed abortionist;" the court did not reverse on account of there being no objection on the trial, but said "it was highly improper for the prosecution to do or say anything whose only effect will be to inflame the passions or arouse the prejudices of the jury against the accused, without throwing any light upon the case in hand."

In the late and well-considered case of People v. Ray, 36 App. Div. 389, 55 N. Y. Supp. 410–17, the Supreme Court of New York, in speaking of the duty of a public prosecutor to the state and one charged with crime, said:

" The position of the prosecuting attorney is semi-judicial, and he is called upon to exercise his duty with fairness and discretion. It is his official duty to see that all trials are prosecuted so as to shield the innocent as well as to convict the guilty."

This language is in accord with the almost universal adjudications of the courts, as well as with reason, fairness and justice. What would be thought of the fairness and justice of this trial if the learned trial judge had told the jury, in any of his rulings or instructions, that some of the state's leading witnesses were criminals, perjurers or convicts who had worn the striped livery of the state, and there had been an acquittal of all the defendants? There was basis in the evidence for such remarks, but had they been indulged in by the learned judge and an acquittal of the defendant been the result, the greatest indignation of all good citizens would justly have been aroused. The position of the state's attorney being semi-judicial, and it being his duty to be fair and just in his conduct of trials, both to the state and the accused, he has no right to bring before the jury, under the guise of argument, anything not shown by the evidence in the case, nor to indulge in personal abuse of a defendant or witness, nor to characterize him as a criminal, a perjurer or convict, though there may be basis for it in the evidence. If he does this, its only tendency is to bias and prejudice not only the jury, but the trial court, and to produce unjust and vicious results—even to bring just condemnation upon the court that permits it. The same is also true as to a defendant's counsel, who as a part of the court is in duty bound to aid in the fair and impartial administration of the law, and should never seek by any word, act or conduct to bias or prejudice court or jury against the prosecution. If he uses inflammatory language or indulges in personal abuse of witnesses he should be promptly rebuked, and such measures taken by the court as would effectually prevent any repetition of such conduct.

### INSTRUCTIONS.

Among other instructions given for the state were the following .

O'Donnell v. The People.

" 18.   The court instructs the jury, as a matter of law, that the evidence in proof of a conspiracy will, in general, be circumstantial; and, although the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed, in terms, to have that design, and to pursue it by common means."

" 27.   The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that a conspiracy in manner and form as charged in the indictment, was entered into by any two or more of the defendants in this case, and that the defendants Patrick H. O'Donnell and James T. Brady were cognizant of such conspiracy, and in pursuance thereof selected, or assisted in selecting, or stood by, actively engaged as attorneys for the Chicago Union Traction Company while selecting a jury in the case mentioned in the indictment, knowing or believing that one or more of the jurors selected for such trial was previously approached to go upon such jury in pursuance of such conspiracy, then such participation with such knowledge, in securing or endeavoring to secure such a juror, constituted an overt act in such conspiracy which renders them equally liable with the other two or more conspirators whom you may so find engaged in such conspiracy.   They would also be equally liable as co-conspirators, if they knew of such conspiracy beforehand, and as attorneys for the Chicago Union Traction Company permitted such case to go to trial, knowing or believing that any one of the jurors therein was secured in pursuance of such conspiracy; and if you so find that there was such a conspiracy, any act done by any one of the conspirators to secure such jury for the purpose charged in the indictment, became their act, even though they had no knowledge of the same; and if you so find the facts to be as aforesaid, then you should find them guilty."

We think the eighteenth instruction is erroneous in stating that, as matter of law, the evidence in proof of conspiracy will, in general, be circumstantial, but that the error could not have prejudiced the plaintiffs in error.

We are of opinion that the last sentence of the twenty-seventh instruction is clearly erroneous, because it, in effect, tells the jury that O'Donnell and Brady were liable as co-conspirators if, before the trial of the Union Traction case, they knew of the conspiracy in question, and, acting as attorneys of the Traction Company, permitted the case to go

to trial, believing that any one of the jurors therein was secured in pursuance of such conspiracy. This instruction would allow the conviction of Brady and O'Donnell, if they knew of the conspiracy and permitted the Traction case to go to trial with the mere belief that one of the jurors was secured in pursuance of the conspiracy, without their having taken any part in the conspiracy themselves, and not even knowing that any particular juror was corrupt. In other words, a mere knowledge, with passivity on their part, would be enough to convict them of conspiracy. Such is not the law. 2 Wharton's Crim. Law, Sec. 1341a; Evans v. People, 90 Ill. 384–90; State v. King, 74 N. W. Rep. (Ia.) 691.

The Iowa Supreme Court say :

" The mere knowledge, acquiescence or approval of an act, without co-operation or agreement to co-operate, is not enough to constitute the crime of conspiracy."

Our Supreme Court, in the Evans case, say that in order to sustain the charge of conspiracy " there must be something showing active participation of some kind by the parties charged."

Complaint is made that the court erred in giving the second, sixteenth and nineteenth of the state's instructions and in refusing to give the twenty-ninth instruction asked by the defense. We see no cause for reversal in either of these given instructions, for the reasons claimed by counsel, and the refused instruction, we are of opinion, was properly refused, because it calls attention to special facts and tells the jury that these facts of themselves are not sufficient to convict O'Donnell and Brady. Such instructions have been frequently disapproved by this and the Supreme Court.

While the court was reading the instructions to the jury, a part of one sentence of an instruction having been read by the judge, he tore it from the other instructions, laid it aside, erased the word " Given," which had been written upon it, and marked it " Refused," and stated orally to the jury " that instruction should be out." This, it is claimed,

O'Donnell v. The People.

was error, but we think not.   It is not urged that it was error to refuse the instruction, and the part of it which was read to the jury was not sufficient to convey to them any idea of the import of the instruction— was meaningless. The fact that the court stated orally to the jury that the " instruction should be out," was not an instruction to them upon the law, and could not possibly have prejudiced plaintiffs in error.   After the jury had retired to consider their verdict a written communication was sent through the bailiff to the trial judge by the jury, asking if the jury had " the power to fix the term of imprisonment and fine, in case of guilty, or has the court that power?"   The court then sent for the jury and gave a written instruction in regard to the fixing of the penalty, which is not claimed to be erroneous, but it is said there was error because the court gave this instruction in the absence of plaintiffs in error and their counsel.   The record does not show affirmatively that either of the plaintiffs in error was absent from the court room at the time in question, except that the affidavit of Gallagher states that he and his counsel, Mr. Hardy, were absent from the court.   On the contrary it appears from the record that the defendants, " as well in their own proper person as by their counsel," came into court on the day in question, and does not state that they were at any time absent therefrom.   Their presence in court can not be denied by affidavits, but could only be made to appear by a recital in the bill of exceptions. Dreyer v. People, 188 Ill. 40–64, and cases cited.

Moreover it appears from the record that all the plaintiffs in error were represented by Mr. Hardy, and he is not shown to have been absent from the court at the time in question, except that this is stated in the affidavit of Gallagher, but it fails to state any facts from which it appears he could have known of Mr. Hardy's absence at this time.

### Verdict Illogical.

For Gallagher it is claimed that the verdict is contrary to the law, illogical and unjust, and counsel assign as a reason,

in support of the claim, that Gallagher is given a penitentiary sentence, while only a fine is imposed on the other defendants. It is true that under the law, as argued by counsel, each conspirator is held accountable for all the acts done by and declarations of his co-conspirators in carrying out the conspiracy or within its general scope. It does not, however, follow, because each is guilty of the same crime, that the punishment of each should be the same. What the measure of the punishment should be is a question for the jury, and we can perceive no reason why the punishment of all should be the same without any reference to the different parts taken in forming and consummating the conspiracy. The more humble, ignorant and indifferent agent of the designing, active, well-informed and aggressive participant in a conspiracy, all reasonable minds will agree, should not be punished equally with his employer. Nor can we agree with the claim of counsel that the learned trial judge in passing upon the motion for new trial expressed any dissatisfaction in this respect with the jury's verdict. We are of opinion that the verdict, in giving Gallagher a term in the penitentiary and imposing only a fine on Brady and P. H. O'Donnell, is illogical, since they are each found guilty of the conspiracy. When it is considered that O'Donnell and Brady, lawyers of recognized ability and past high standing as citizens, are found guilty of a conspiracy to corrupt a jury in a court of justice, if the evidence justifies such a finding, their punishment by both fine and imprisonment to the extent of the law would not be too severe. And the verdict of the jury as to these three defendants can, in our opinion, only be accounted for upon one of three hypotheses, viz.: either that the jury had a reasonable doubt of the guilt of P. H. O'Donnell and Brady, or was prejudiced against them by incompetent evidence and the assistant state's attorney's conduct, or that they were misled by the twenty-seventh instruction into believing that guilt of a conspiracy was established by proof of previous knowledge thereof and a passive acquiescence therein without active participation of any kind. But Gal-

O'Donnell v. The People.

lagher can not be heard to claim, for this reason alone he should be awarded a new trial, if the evidence clearly establishes his guilt and that he was an active, intelligent and aggressive participant in the crime.

### FORMER CONVICTION OF GALLAGHER.

For Gallagher it is also argued, with great earnestness, that the court should have discharged him from further custody and the judgment be arrested, because in case No. 65,427, mentioned in the statement, he pleaded guilty and the court imposed a fine of $2,000 upon him, which he paid, which indictment and punishment he claims is for the same conspiracy as the one charged in the indictment in this case; that under the judgment herein he would be punished a second time for the same offense.

The indictment in this case, as will be seen by the statement, charges a conspiracy in which Gallagher and the other plaintiffs in error conspired with Jones, Michaels, Rolfe and Sheridan to do an unlawful act, viz., by promised rewards, etc., to unlawfully procure a verdict for the defendant in a cause, describing the same, before a justice of the peace named. The indictment in case No. 65,427 charges a conspiracy in which Gallagher, Simon, Miller, Brown, Voorhees and Peck conspired with the said Jones and three other persons, viz., Boesse, Gazely and Ward, to do an unlawful act, viz., an act similar to the one described in the first indictment, the only difference in the two indictments in that regard being that the conspiracy in this case is alleged to have been entered into on the 14th day of April, while in case No. 65,427 the agreement, it is alleged, was made on April 21, 1902. We are of opinion that the two indictments charge two separate and distinct conspiracies. The allegation as to the time in the two indictments may be wholly immaterial, as claimed by counsel, but it seems clear that a conspiracy between the plaintiffs in error, Jones, Michaels, Rolfe and Sheridan, is a different conspiracy from one entered into between Gallagher and Simon, two of the plaintiffs in error, and said Jones, together with Miller,

Brown, Voorhees, Peck, Boesse, Gazely and Ward. In the first case there are ten persons charged with the conspiracy, while in the second, though the number of the persons charged is ten, only three of them, viz., Gallagher, Simon and Jones, named as conspirators in the first case, are the same as those named as conspirators in the second case. We have examined the evidence in both cases, and the evidence in support of the first case tends to show a conspiracy between all the plaintiffs in error, in no way involving either Miller, Brown nor Voorhees, three of the persons charged with conspiracy and found guilty in the second case, and which the evidence in that case tends to support.

Mr. Bishop in his Criminal Law, Vol. 1, Sec. 886 (3d Ed.), lays down the rule which is relied on by counsel for Gallagher, by which it may be determined whether the offense is the same under two different indictments, viz.:

"The test is whether, if what is set out in the second indictment had been proved at the trial under the first, there could have legally been a conviction; when there could have been, the second can not be maintained; when there could not, it can be."

Taking this rule, which seems reasonable and has the support of well-adjudicated cases, as a guide, it is evident that Gallagher would not be punished under the judgment in this case for the same offense to which he pleaded guilty as above stated. It is unnecessary to consider whether Gallagher waived his defense in this regard, as claimed by counsel for the state.

For Gallagher the claim is made that a new trial can not be granted to one defendant in a conspiracy case and judgment affirmed as to the others; that a new trial must be granted to all or none. The cases cited in support of this contention, viz., Regina v. Gompertz, 58 E. C. L. Rep. 841, and Isaacs v. State, 48 Miss. 234, do not support the claim. In both these cases the verdict was joint, and for that reason they have no application. It seems manifest, there being a separate verdict and judgment as to each of the plaintiffs in error, that there may be an affirmance or reversal as to one, or any number, or all.

### EFFECT OF THE ERRORS.

It only remains to consider whether the judgments as to P. H. and John O'Donnell, Brady and Gallagher, they being separate as to each of the plaintiffs in error and based on separate verdicts, should be reversed or affirmed by reason of the errors pointed out. In this connection it should be noted that plaintiff in error Simon has dismissed the writ of error as to himself, and no brief nor argument has been filed on behalf of either of the plaintiffs in error Lawrence or Rothery. We do not on that account consider any errors assigned by either of these plaintiffs in error, and as to the last two the judgment must be affirmed.

The state's case, in our opinion, after the most careful reading and consideration of the evidence in view of the contentions of the different counsel, depends mainly upon the evidence of its witnesses Michaels, Jones, Thomas Ashworth, Green and Holbrook, in so far as relates to the proof of the conspiracy, and the acts, declarations and circumstances which tend to incriminate the different persons charged therewith. Without the testimony of these five witnesses, and especially that of Michaels, Jones and Green, the verdict could not stand. Both Jones and Michaels are charged with the conspiracy and have admitted their guilt. Jones was not indicted, and admits that when he confessed to the state's attorney, which he did after his arrest and imprisonment, he did so with the idea that he would get immunity—that is, as he says, if he would tell the story he would not be indicted. He also admits that at no time since he first told his story to the state's attorney had he been out of the company of police officers day nor night. Michaels pleaded guilty to a felony in Minnesota and served a term in the penitentiary of that state, and in effect admits on cross-examination that he told his story to avoid indictment. He has not been indicted. Six witnesses called by the defense testified, in substance, that his general reputation for truth and veracity among people who knew him was bad, and that they would not believe him under oath. The state, in rebuttal, called six witnesses who testified to

Michaels' general reputation for truth and veracity and that it was good, but on cross-examination the evidence of each of these last six witnesses is shown to be of little value. The witness Green is shown to have been a gambler, is not charged with conspiracy, but admits that he took part in it, and, in his endeavor to have himself selected as a juror in the Traction case, told untruths. Eight witnesses called for the defense, apparently reputable, testify, in substance, that Green's general reputation for truth and veracity in the community in which he lives is bad, and that they would not believe him under oath. The state called five witnesses who testified, in substance, that Green's reputation for truth in the community was good. He was directly impeached by one witness as to alleged previous contradictory statements made by him different from his evidence for the state. The evidence of Thomas Ashworth, as we have seen, was important to the state if the matters to which he testified occurred before the trial of the Traction case, but if they were after that trial, as testified to by several witnesses for the defense, then his testimony is of no probative value. His evidence as to the date of these occurrences is very indefinite. The evidence of Holbrook is very important to the state, and especially in its bearing upon the guilt of Gallagher and John O'Donnell, but if the evidence of Jones, Michaels and Green is not to be credited, it is of little importance. To state the details and bearing of the evidence of these several witnesses is unnecessary; suffice it to say, if they are to be believed, their evidence, in connection with the other evidence in the case on the part of the prosecution, is sufficient to sustain the verdict.

The testimony of the plaintiffs in error and their witnesses, if they are to be credited, would justify a verdict of acquittal. Brady and the O'Donnells all deny all knowledge or connection whatever with the alleged conspiracy, and they are supported by the evidence of quite a number of witnesses who testify to matters, conversations and occurrences tending to show the innocence of these three plaintiffs in error. These three plaintiffs in error called

O'Donnell v. The People.

numerous witnesses, many if not all of them reputable persons of good standing, who testified in substance that the reputations of the O'Donnells and Brady for honesty and integrity and as law-abiding citizens, were good. Thirty-five such witnesses testified in behalf of John O'Donnell, thirty-nine witnesses in behalf of Brady, and forty-three witnesses in behalf of P. H. O'Donnell. The state produced no evidence in opposition to these character witnesses. The evidence in support of the defense of Gallagher is not so strong as that in behalf of the O'Donnells and Brady. He is shown to have been convicted of the crime of forgery and sentenced to one year in the penitentiary and served seven months of that time. As we have seen, he was not permitted to show that he was pardoned. And he, associated with the state's witnesses Green and Michaels, knew Jones three or four years prior to the Traction trial, and admits conversations with him prior to the trial, and that he made arrangements with Jones by which he was to get certain disreputable persons that he knew upon the Traction jury—in effect admits a conspiracy between himself and Jones to benefit their impecunious and disreputable friends by getting them upon the Traction jury so that they could earn some money. To state and discuss all the conflicting evidence in the case and show its bearing and probative value in establishing the charge of conspiracy and the defense of these plaintiffs in error thereto, would require many days and would be unprofitable.

The other rulings of the court of which complaint is made have been considered. They are either similar to those specifically mentioned and present no greater reason for reversal than those referred to, or where they present different questions, we think the rulings were not erroneous.

The clear weight of the evidence, considered in all its bearings, in our opinion is with the verdict as to Gallagher, and the majority of the court, not including the writer, is of opinion that the jury, acting reasonably under the evidence, could have reached no other conclusion than that of guilt beyond a reasonable doubt as to Gallagher.

As to John O'Donnell, a like majority, not including the writer, is of opinion that the evidence warrants the verdict. We all agree that as to him the verdict can not be said to be against the decided weight of the evidence.

These conclusions make pertinent the following cases, viz.: Steffy v. People, 130 Ill. 99; Lathrop v. People, 197 Ill. 169–74; Bonardo v. People, 182 Ill. 417–20; Siebert v. People, 143 Ill. 571–91; Henry v. People, 198 Ill. 162–82; Schroeder v. People, 196 Ill. 214.

It was said by the Supreme Court in the Steffy case, and the language is quoted and approved subsequently in the Lathrop case:

"Whether the evidence warranted the verdict was a question of fact peculiarly within the province of the jury to determine, and great weight is to be given to their findings. Courts are reluctant to substitute their opinion for that of the jury upon controverted questions of fact. To justify this court in reversing on the ground that the evidence was insufficient, it must appear that the finding of the jury is not sustained by the evidence or that it is palpably contrary to the decided weight of the evidence. It is only when this court is able to see from a careful consideration of the whole testimony that there is clearly a reasonably well-founded doubt of the guilt of the accused, that it will interfere on the ground that the evidence does not support the verdict." Citing Gainey v. People, 97 Ill. 270; Hanrahan v. People, 91 Ill. 142; Rogers v. People, 98 Ill. 581.

To a like effect are the other cases cited. In view of these decisions said majority of the court is of opinion that notwithstanding the errors mentioned, none of which said majority believe affected the result as to Gallagher and John O'Donnell, the judgment as to these two plaintiffs in error should be affirmed.

As to the plaintiffs in error Brady and P. H. O'Donnell, the state's case is neither so clear nor satisfactory as that relating to Gallagher and John O'Donnell. And inasmuch as the erroneous instruction No. 27, hereinbefore referred to, affects only these two plaintiffs in error, we think the judgment as to them should be set aside and a new trial awarded.

O'Donnell v. The People.

DISSENT OF WRITER.

The writer, after the most deliberate consideration, can not assent to the views of the majority of the court as to the effect of the numerous errors mentioned upon the jury's verdict as to John O'Donnell and Gallagher.

Every person charged with crime, however guilty as matter of fact, is entitled to a fair and impartial trial, conducted according to the forms of law and approved precedents, before a jury which is not affected by any remarks or language of court or counsel calculated to inflame their passions or to create any bias or prejudice in their minds against him. Such person is also entitled to have placed before the jury all competent and material evidence in his favor, and to have excluded all improper evidence offered against him calculated to bias or prejudice the jury. The different errors in the trial have been as fully stated as are necessary, and need no comment. These two plaintiffs in error have not, by their trial, been given their legal rights. Inasmuch as the law is settled that once the conspiracy, such as is here charged, is established, each conspirator is liable for all the acts done and declarations made by the others in carrying out the general agreement, when within the general scope of such conspiracy. Lamb v. People, 96 Ill. 73; Hamilton v. People, 113 Ill. 34; 6 Am. & Eng. Ency. of Law, 866, and cases cited.

This being true, and there being evidence tending to establish the conspiracy charged as to all the plaintiffs in error, all the incriminating evidence against each of the plaintiffs in error is competent against the others. What tends to bias or prejudice the jury as to one would naturally affect all the others, and if the testimony of one or more of the plaintiffs in error, which is favorable to the others, is disregarded, or given slight consideration by the jury, because of such bias or prejudice, then the trial is not fair and impartial. Whatever was prejudicial as to P. H. O'Donnell and Brady (aside from the twenty-seventh instruction, which related to them only), or to Simon or Lawrence, would naturally have an effect upon the jury in consider-

ing the cases of John O'Donnell and Gallagher. If the evidence of P. H. O'Donnell, Brady, Simon or Lawrence, or either of their witnesses, was to any extent discredited because of the errors committed on the trial, which the writer thinks was the case, the fact would have a material bearing upon the verdict as to Gallagher and John O'Donnell, and for that reason they did not have the fair and impartial trial to which they were entitled. The same errors, omitting the instruction referred to, which justify the reversal as to P. H. O'Donnell and Brady, in the writer's opinion, require a reversal as to Gallagher and John O'Donnell.

The language used by the Supreme Court in the Steffy case, which has been quoted, was with reference to a claim that the verdict was clearly against the weight of the evidence, and the record presented no other available ground of error. In the Lathrop case, where the language in the Steffy case was approved, the court was discussing a claim of the insufficiency of the evidence to sustain the verdict, and, among other things, said:

"In the absence of errors of law, the court will not set aside a verdict unless it is manifestly erroneous."

The court also discussed two other alleged erroneous rulings of the trial court, and held that they were not error. Neither of the other cases cited on this point is, in the writer's opinion, as strong as the two referred to, and should not control the decision as to John O'Donnell and Gallagher.

In Raggio v. People, 135 Ill. 533, the Supreme Court, in speaking of erroneous remarks and statements of the state's attorney, said:

"The trial court erred in overruling defendant's objections to these statements, and while a court of review will always hesitate to set aside a conviction for such error alone, yet in a case like this, where there is much reason to fear that the verdict was not the result of a dispassionate consideration of all the evidence in the case, it becomes material and substantial error."

To the same effect in principle are: McDonald v. People,

O'Donnell v. The People.

126 Ill. 150–5; Feinberg v. People, 174 Ill. 609–17; Synon, v. People, 188 Ill. 609-26; Henry v. People, 198 Ill. 162–85; Wetzel v. Meranger, 85 Ill. App. 457; W. C. St. R. R. Co. v. Kean, 104 Ill. App. 147.

In the Feinberg case the court, in speaking of remarks of the trial judge, said :

" The evidence may have been sufficient to authorize a conviction, but that was a question for the jury, and not for the court, and it was clearly error for the court to express any opinion in the hearing of the jury as to the force or effect of the evidence upon the question of the guilt or innocence of the accused."

The last two cases cited are civil cases, but unwarranted remarks of counsel were held to be reversible error, and the latter case was reversed solely because of counsel's remarks in argument to the jury, in which he said he " loathed and detested " one of appellant's witnesses, and in strong language questioned the truthfulness of anything the witness might state under oath, although the trial judge ruled that the statements were improper and after the ruling counsel asked that the remarks be stricken out.  Surely, if justice required a reversal for such remarks in a civil case, no less stringent rule should apply in a criminal case in which, as in this case, the life reputation of John O'Donnell, as well as the liberty of both these defendants, is at stake, and much of the evidence on which the verdict is based, to say the least, comes from persons of questionable character and credibility.

The writer is further of opinion that it is apparent from the verdict that the jury was prejudiced by the error referred to as to Gallagher, because while they found P. H. O'Donnell and Brady, whom the state's attorney in his argument called the " arch conspirators," guilty of the same conspiracy, they are let off with a fine and he is sentenced to the penitentiary.  If they were guilty, their punishment should at least have been equal to that imposed on Gallagher.

For the reasons stated in the majority opinion the judgment as to the plaintiffs in error William J. Gallagher,

John O'Donnell, Hammond T. Lawrence and Herbert Rothery is affirmed, and as to the plaintiffs in error Patrick H. O'Donnell and James T. Brady it is reversed and the cause remanded.